No. 38,719

J. R. BETTS, as Administrator of the Estate of May Wright, Deceased, et al., *Appellants*, v. LEO J. ROGERS and IANTH WRIGHT ROGERS, Husband and Wife, *Appellees*.

(250 P. 2d 801)

Opinion filed December 6, 1952.

F. J. *Schroeder*, of Curtis, Nebraska, and *Wallace T. Wolfe*, of Oberlin, argued the cause and were on the briefs for the appellants.

*John M. Bremer* and *L. F. Cushenbery*, both of Oberlin, argued the cause and were on the briefs for the appellees.

The opinion of the court was delivered by

HARVEY, C. J.: Some of the questions which arose between the parties to this action respecting their rights to the real property

involved were determined by this court in its opinion in *Wright v. Rogers*, 167 Kan. 297, 205 P. 2d 1010, and *In re Estate of Wright*, 170 Kan. 400, 227 P. 2d 131. We refer to the opinions in these cases for the questions there determined. After our decisions in the last case mentioned the parties completed the making up of the pleadings, certain facts were stipulated, there was a pretrial conference and a trial by the court. At the close of plaintiffs' testimony the contesting defendants demurred thereto, the demurrer was sustained by the trial court, and plaintiffs have appealed.

The record discloses that for some years prior to his death on November 28, 1938, William R. Wright was the record owner of a described tract of 480 acres of land in Decatur county. He and his wife, May Wright, had lived upon the property for a number of years. About 200 acres of the land were in cultivation and the remainder in pasture. In November, 1936, William R. Wright and his wife had executed mortgages on this land to the Federal Land Bank of Wichita to secure the payment of notes in the sum of $4,000, and also executed a mortgage on the land to the Land Bank Commissioner of Wichita to secure the payment of $300. William R. Wright left a will by which he devised all his real property to his wife, May Wright. Under date of December 1, 1939, May Wright executed a quitclaim deed for all of the real property to Leo J. Rogers, the husband of her daughter, Ianth Wright Rogers. Under date of May 13, 1943, Leo J. Rogers executed a quitclaim deed covering the same real property to his wife, Ianth Wright Rogers. Both these quitclaim deeds were duly recorded on March 19, 1943. May Wright did not remarry and died intestate October 16, 1946. She left surviving her six children and children of two deceased children. In amending the petition since our last decision all of the heirs at law of May Wright were made parties plaintiff, along with the administrator of her estate, except a son, Harold Wright, and her daughter, Ianth Wright Rogers. They were made defendants together with Leo J. Rogers. Harold Wright made a voluntary appearance and filed an answer in which he neither affirmed nor denied the allegations of the amended petition but asked, in the event the petition be allowed, that his rights in the subject matter of the litigation be protected.

The real purpose of the action is to have the quitclaim deed executed by May Wright conveying the real property to Leo J. Rogers construed to be a mortgage, and the quitclaim deed executed by Leo J. Rogers to his wife, Ianth Wright Rogers, be held to be an

assignment of the mortgage, and that there be an accounting of the sums paid by Leo J. Rogers and his wife, or either of them, upon the mortgage debt or for taxes or other necessary purposes, and also an accounting of rents received from the property, and that an equitable decree be rendered by the court respecting the property and the income therefrom, details of which need not be stated.

Since plaintiffs' case depends primarily upon what agreement was made between May Wright and Leo J. Rogers and his wife at the time she executed the quitclaim deed on December 1, 1939, other than what is shown by the instrument itself, we think best to set out the allegations of the petition pertaining to that matter. They are found in paragraph 9 of the petition as amended. The paragraph reads. as follows:

"9. That on or about December 1, 1939, the defendant, Leo J. Rogers, husband of the defendant Ianth Wright Rogers, and a son-in-law of said May Wright, had income or means by which he represented to May Wright he would be able to pay, or help pay, such taxes, expenses and instalments due and to become due on the aforesaid indebtedness; and on or about December 1, 1939, said May Wright, at the suggestion, instance and request of said Leo J. Rogers and Ianth Wright Rogers, executed and delivered to said Leo J. Rogers a deed whereby said real property was conveyed to said Leo J. Rogers upon the agreement and for the reasons hereinafter set out, which said instrument was in form a quitclaim deed; that said quitclaim deed was executed and delivered to said Leo J. Rogers by said May Wright, upon the following agreement, understanding and conditions, to-wit:

"(a) It was agreed, by and between said Leo J. Rogers and Ianth Wright Rogers, and the said May Wright, that said Leo J. Rogers and Ianth Wright Rogers would, from their own funds, advance and pay such sums as May Wright herself could not pay, on the taxes on the above-described real property, on the expense of operating same, and upon the above-described mortgage indebtedness, and that said May Wright would thereby and thereupon become indebted to said Leo J. Rogers and Ianth Wright Rogers for such sums as might be advanced and paid under said agreement, and that said Leo J. Rogers and Ianth Wright Rogers would be repaid such sums so advanced and paid by them, by the said May Wright, or from the rents and profits of said real property thereafter to accrue, or from the sale of said real .property if same should be necessary to raise money to pay said advanced sums.

"(b) It was further agreed, by and between said Leo J. Rogers and Ianth Wright Rogers, and the said May Wright, that said Leo J. Rogers and Ianth Wright Rogers, upon payment to them of such sums as they had advanced and paid out of their own funds under the above agreement, would reconvey said real property to said May Wright, or would convey said real property to all those persons who would be heirs-at-law of said May Wright should said May Wright be dead at the time of the payment of such sums or debt to said Leo J. Rogers and Ianth Wright Rogers.

"(c) And it was agreed by and between said Leo J. Rogers and Ianth

Wright Rogers, and said May Wright, that the aforesaid deed from May Wright to Leo J. Rogers was made, executed and delivered for the purpose of securing to said Leo J. Rogers and Ianth Wright Rogers such sums as it was anticipated May Wright would owe to said Leo J. Rogers and Ianth Wright Rogers for the sums which said Leo J. Rogers and Ianth Wright Rogers thereafter should actually advance and pay for said May Wright for the purposes above set forth; and it was the purpose and intent of all of said parties, to-wit, of Leo J. Rogers, Ianth Wright Rogers, and May Wright that said instrument to said Leo J. Rogers which is of record in book 58 of deeds at page 264 of the records of Decatur County, Kansas, was in fact a mortgage, although in form a deed. And it was at all times understood by said Leo J. Rogers, Ianth Wright Rogers, and May Wright that the said quitclaim deed to said Leo J. Rogers was a mortgage, and security for the debt owing, and to become owing, from said May Wright to said Leo J. Rogers and Ianth Wright Rogers; and by reason of the foregoing the said quitclaim deed to Leo J. Rogers, made by said May Wright as aforesaid, at the time of its execution became and was, and ever since has been, and now is, a mortgage."

In respect to defendants' motion to make the paragraph more definite an amendment to the petition was made in which it was alleged that the agreement set out in paragraph 9 was oral and was made in Decatur county, the exact place in the county being unknown, and provided:

". . . that the sums advanced, and/or to be advanced, by Leo J. Rogers and/or Ianth Wright Rogers, as set forth in subparagraph (a) of said paragraph 9 of said Petition, were to be repaid when the rents and profits of the real property described in said Petition were sufficient to enable said May Wright, or her heirs or devisees, to repay said sums; or when said May Wright, or her heirs or devisees, otherwise should become able to repay said sums; or from the proceeds of a sale of said real property if same should be sold; or when settlement should be made among all the heirs or devisees of William R. Wright and May Wright of the affairs of the estates of said William J. Wright and May Wright."

It was also alleged in the petition that on December 1, 1939, and for a considerable time prior thereto and thereafter, Leo J. Rogers and his wife were acting for May Wright and influenced her in her business affairs, and that the relations between them were confidential and fiduciary.

At the trial the plaintiffs offered no testimony bearing directly upon any of the oral agreement set out in paragraph 9 of their petition. It was agreed by the parties that the sum of $4,467.55 was due the Federal Land Bank and Federal Land Bank Commissioner on their mortgages on the land on December 1, 1935, which sum included taxes paid by the mortgagee, but did not include unpaid interest, or interest on taxes and insurance items paid

by the mortgagee, and did not include the 1939 taxes of $139.82. There was evidence at the trial that the land had been appraised at $4,600 by the appraisers appointed in the William R. Wright estate. The date of that appraisal was not given, but since the probate of his will was delayed it could not have been far from the time May Wright gave a quitclaim deed to the property to Leo J. Rogers. There was evidence that Harold Wright lived in a house on the property across the road from what was called the home place where May Wright lived, and that he and she each had a few cattle in the pasture; that he was a tenant on the place and paid crop rent; that he delivered the rent to May Wright until 1943 and thereafter delivered it to Leo J. and Ianth Rogers; that in 1944 Ianth Rogers and her husband executed an oil and gas lease on a part of the property, at which time Harold Wright made a statement to the lessee that the real property was owned by Ianth Wright Rogers and that he had no interest in it except as a tenant. May Wright continued to live on the property until her death in October, 1946. There is no testimony that she made any complaint of the fact that Leo J. or Ianth Wright Rogers collected the rents from the property for the years beginning with 1943, or of the fact that Ianth Wright Rogers and her husband executed various oil and gas leases covering all or a part of the property. Following the death of May Wright administration was not promptly had upon her estate. She had a few head of cattle which were sold, and after the payment of her funeral expenses there was about $700 of money left and the remainder of the proceeds of her personal property was distributed to her heirs at law. The distribution amounted to $87.37 each. Harold Wright continued to farm the place until 1948, paying the rents to Leo J. or Ianth Wright Rogers. One witness quoted Leo J. Rogers as having made the statement, "that he thought he ought to have it back what he put in the place." This was sometime within a year after the death of May Wright. What led up to that statement, or what else was said in that conversation, was not disclosed. G. S. Hoppas, whose wife was a daughter of May Wright, testified to having a conversation with her shortly after Mr. Wright died in 1938. He was asked and answered the following questions:

"Q. Answer the question as to what that conversation was about? A. She asked me to take over the place. She asked me if I would.

"Q. And just what did she say? A. That is all she asked me and I answered her and I told her she had boys and I didn't think it was a son-in-law's place to do that. That is what I answered.

"Q. Now, for the purpose of refreshing your memory, did she say anything about running things? A. No, not particularly of running things. She just wanted to know if I would take over."

He further testified that he had a conversation with May Wright sometime in the spring prior to her death. With respect to that he was asked and answered the following questions:

"Q. Just tell what that conversation was? A. I asked her why she signed the place away and she said she was worried, but she said he was supposed to turn it back—didn't say he would, but said he was supposed to turn it back— the deed—when times got better. That was all that was said.

"Q. Did she say anything in that same conversation with reference to Leo being paid for what he had been paying out? . . . A. I don't think she said anything about that."

R. J. Beckwith, who at one time had lived near the Wright place, was called as a witness for plaintiffs and was asked and answered the following questions:

"Q. Did you ever have a conversation with May Wright after 1943 with reference to her possession of the land? A. I did.

"Q. When did you have that conversation? A. I do not know definitely. It was along about the time of Mr. Wright's death or some time after Mr. Wright's death. I don't remember the date.

"Q. Where was that conversation? A. In Mrs. Wright's home.

"Q. Who was present at the conversation? A. I don't remember anyone being there, except Mrs. Wright and myself. My wife might have possibly been there. I do not know.

"Q. Can you repeat that conversation? A. We were discussing time and conditions, and Mrs. Wright informed me that Leo and Ianth had helped out on some of the payments and that she had deeded the farm to them. That it was necessary for her to deed it to Leo and Ianth due to their helping out on some of the payments, and as an old friend I told her that was a crazy thing to do, or words to that effect, and she said she would admit it was but the understanding was that Leo and Ianth was to deed it back to her when she got in position to take care of herself, and I assume reimburse her; however, I don't remember just the words."

Mrs. Harold Wright testified to hearing a conversation between her husband and May Wright soon after the oil and gas lease was executed, as follows:

"A. My husband asked her why she deeded the place to Leo and Ianth and she said she hadn't. He said that she must have because the oil man said it was in his name and she said she didn't give him the deed to it, and he said, 'Did you sign any paper?' and she said, 'Yes, I signed a paper.' He said, 'It must have been a deed.' And she said, 'No, it wasn't a deed.'"

The witness further testified to having a conversation with May Wright after she had visited with Leo and Ianth Rogers over Christ-

mas in 1945, in which she spoke of selling the place. The witness was asked to repeat the conversation and answered:

"A. She just said she believed she would sell the farm and move to town, but I think it was just talk."

The witness further testified that on one occasion when she and her husband and Ianth Rogers were talking Ianth said they took the place for Harold's benefit. The meaning of that statement was not explained.

There was further evidence that May Wright made some payments on the mortgage indebtedness in 1942. The amounts of those payments were not disclosed.

It is clear that none of this evidence went to the oral agreement alleged in paragraph 9 of the petition. There is no evidence to the effect that whatever agreement Leo J. Rogers and his wife made with May Wright in 1939, or later, was not carried out. No fraud is charged and no fraud was attempted to be proven.

We find no error in the record. The judgment of the trial court is affirmed.