No. 37,563

ERNEST T. WRIGHT et al., *Appellees,* v. IANTH WRIGHT ROGERS and
LEO J. ROGERS, *Appellants.*

(205 P. 2d 1010)

Opinion filed May 7, 1949.

*John M. Bremer* and *L. F. Cushenbery,* both of Oberlin, were on the briefs for the appellants.

*Wallace T. Wolfe,* of Oberlin, and *F. J. Schroeder,* of Curtis, Neb., were on the briefs for the appellees.

The opinion of the court was delivered by

PARKER, J.: This was an action in district court to enforce a trust relating to land. The defendants filed a motion to dismiss the action for the reason the district court had no jurisdiction of the subject matter. The appeal is from an order overruling that motion.

At the outset we feel compelled to state, notwithstanding the rule orders overruling motions to dismiss are not ordinarily final orders

and therefore not appealable under the civil code (G. S. 1935, 60-3302), that since everyone concerned, including court and counsel, agree it was so treated in the court below, we have decided to regard the instant motion as tantamount to a demurrer and the ruling in question as equivalent to an order overruling a demurrer to the petition on the statutory ground (G. S. 1935, 60-705 [first]) on which it is based.

The factual allegations set forth in the first cause of action of the petition, giving them the benefit of all inferences to which they are entitled when a pleading is challenged by a demurrer, can be stated in substance as follows:

The plaintiffs are children and heirs-at-law of May Wright who acquired title in fee simple to certain real estate, heavily encumbered, located in Decatur county under and by virtue of the will of her deceased husband who died in 1938. The defendant Ianth Wright Rogers is her daughter and the defendant Leo J. Rogers is the latter's husband.

On or about December 1, 1939, May Wright, at the suggestion and request of the defendants, executed and delivered to Leo J. Rogers a quitclaim deed to such real estate which was recorded by him on March 19, 1943. At the time the deed was executed and delivered the defendants were dealing with May Wright under conditions and circumstances amounting to a confidential relationship and she was in failing health and in such a feeble and weak state of mind and body as to be incapable of fully transacting her business affairs.

In order to induce the grantor, who was unable to farm or manage the land therein described, to execute the deed Leo represented and promised her the defendants would advance and pay taxes and other operating expenses of the land, and the installments of principal and interest falling due on indebtedness secured by mortgages thereon, such as she would be unable to pay; *that if she became able to repay defendants for the sums so advanced by them they would then reconvey the property to her,* or if she died without paying such advancements they would convey the property to her heirs-at-law; that such real estate would be held in trust for Mrs. Wright's benefit or the benefit of her heirs-at-law in the event of her death; and that in the event of its sale after her death the amount realized from the sale thereof would be delivered to her heirs-at-law after due accounting had been made to defendants for all sums advanced by them.

March 13, 1943, Leo executed and delivered a quitclaim deed to his wife conveying her the real estate deeded to him by Mrs. Wright. This deed, recorded on March 19, 1943, was executed without consideration except for such funds as Ianth may have advanced to pay on indebtedness against the land.

May Wright died October 19, 1946, intestate, a resident of Decatur county. No administration has ever been had or commenced on her estate and more than one year next preceding the commencement of the action had elapsed since the date of her death.

Since Mrs. Wright's death the defendants have refused to reconvey the real property, the value of which is greatly in excess of the amount for which it is encumbered, to Mrs. Wright's heirs.

Further averments of the first cause of action are to the effect: The acts of the defendants in procuring the deed from Mrs. Wright, in causing the quitclaim deed to Ianth to be executed and recorded, and in failing and refusing to convey the real estate therein described to her heirs-at-law constitutes fraud, artifice, duress and undue influence; that such deed was originally obtained from Mrs. Wright by fraud and undue influence and would not have been executed and delivered by her except, therefore, that on the date of its execution and delivery, or any other date, Mrs. Wright *never designed, intended or desired to make disposition of her real property so as to make an unequal division thereof among her heirs-at-law at the time of her death.*

The second cause of action set forth in the petition is for ejectment, the third for an accounting of rents and profits and the fourth for partition. These causes of action are all dependent upon determination of plaintiffs' rights under their first cause of action and for that reason there is no occasion to detail their allegations.

In the prayer of their pleading the plaintiffs ask the court, with reference to their first cause of action, to find that Mrs. Wright died intestate leaving the plaintiffs and the defendant Ianth Rogers as her sole heirs-at-law; that the defendants be decreed to hold title to the real estate as trustees for the benefit of all such decedent's heirs-at-law; that the court direct defendants to execute proper conveyances to the real estate or that plaintiffs be found to be tenants in common thereof; and that defendants be required to account for rents and profits after taking credit for sums advanced by them.

Since the parent case of *Foss v. Wiles,* 155 Kan. 262, 124 P. 2d

438, this court has consistently held that by reason of the Kansas probate code (Laws 1939, ch. 180) and particularly what is now G. S. 1947 Supp. 59-301, the probate courts of this state have exclusive original jurisdiction over all matters incident and ancillary to the settlement and distribution of decedent estates, except where such code expressly provides otherwise. This general principle has become so well established in so many cases (See West's Kansas Digest, "Courts," §§ 200, 472, and Hatcher's Kansas Digest, "Courts," §§ 72 to 76, incl.) involving varying facts and circumstances that we do not deem it necessary to review them.

Upon careful analysis of the involved pleading it is apparent the fundamental basis of the appellees' claim, however stated, is that the quitclaim deed executed and delivered by Mrs. Wright to the appellant, Leo. J. Rogers, was nothing more than an equitable mortgage securing the payment of indebtedness of the grantor, due or to become due, by reason of advancements of money made for and on her behalf by the grantee for which he was to be repaid. That this conclusion is inescapable becomes crystal clear upon resort to emphasized portions of the factual statement heretofore related wherein appellees definitely so state and in addition allege that Mrs. Wright did not intend by the execution of such instrument to make disposition of the real estate therein described so as to make an unequal division thereof among her heirs-at-law at the time of her death. This being true the equity in the land—the land itself subject to payment of the indebtedness—was an asset of her estate. Even so, it had been deeded away without written reservation and the grantee, who was in possession, was claiming title and ownership. In such a situation administration of Mrs. Wright's estate was necessary in order that an administrator be appointed who, in his fiduciary capacity by himself or in conjunction with the appellees who as heirs-at-law were asserting rights to real estate alleged to be a part of her estate, could proceed in the manner contemplated by G. S. 1947 Supp. 59-1401, and reduce such property to possession and bring it into the estate as an asset subject to final settlement and distribution. There can be no doubt, under provisions of the code heretofore noted and our decisions construing them, that all proceedings necessary and incident to the marshaling of the assets of an estate come within the exclusive original jurisdiction of the probate court. Hence, inasmuch as the jurisdiction status of the entire cause is completely dependent upon the first cause of action

of the petition, it necessarily follows the district court had no jurisdiction of the subject of the appellees' action and should have sustained appellants' motion to dismiss, which was based upon that premise.

In an effort to avoid results flowing from the conclusion just announced appellees rely upon several of our cases decided prior to the enactment of the probate code, particularly on *Staab v. Staab,* 158 Kan. 69, 145 P. 2d 447; *Staab v. Staab,* 158 Kan. 77, 145 P. 2d 452; *Staab v. Staab,* 160 Kan. 417, 163 P. 2d 418, of more recent date, involving actions brought directly in district court to enforce a constructive trust. The cases last cited even though they postdate the code are not applicable for the reason they do not deal with the sufficiency of a pleading in district court which shows upon its face it seeks to determine title to real estate which was clearly an asset of a decedent's estate on the date of his death. They are further distinguishable in that the events there relied on happened long prior to the enactment of the code, the rights of the parties were founded upon an alleged family settlement and the jurisdiction of the district court to pass on the validity of the asserted trust was not challenged or passed upon. Moreover, any rule that actions of the character involved in all such cases can be instituted directly in district court has been superseded by the statutory requirements effected by the probate code which require that any attempt to bring back into an estate land which has been conveyed away by a decedent in his lifetime without written reservation, and of which he was not in possession on the date of his death, must be initiated in the probate court.

Finally appellees point out that under the probate code (G. S. 1947 Supp. 59-2250) heirs are permitted to wait for more than a year after the death of their intestate decedent without administration and then have the descent to his property determined in a short form probate proceeding. Quite true. It does not follow, however, as they insist, that under this section of the statute they are authorized to litigate as among themselves their respective interests in the estate of their ancestor. Indeed we have held to the contrary. See *Jardon v. Price,* 163 Kan. 294, 181 P. 2d 469, which holds:

"A decree of decent under the provisions of G. S. 1945 Supp. 59-2250 does not create title but merely declares who has acquired the title of the decedent under the law of intestate succession. The function of the statute is not to

determine claims or controversies affecting the distributive share which would otherwise pass under the law of intestate succession." (Syl. ¶ 2.)

Neither does it follow, as appellees likewise contend, that the construction given the descent statute in the case from which we have just quoted means that there are no circumstances under which heirs of a decedent can protect their right in the property of a deceased ancestor if they have failed to have his estate administered within one year. It is true that in some of our decisions (e. g., *Houdashelt v. Sweet*, 163 Kan. 97, 180 P. 2d 604, and *Gebers v. Marquart*, 166 Kan. 604, 203 P. 2d 125), in order to uphold the purposes of the probate code and plain legislative intent in its enactment to unify administration and expedite the closing of estates, we have held that an action by heirs-at-law to set aside a deed, containing no limitations or restrictions, from a decedent to another of his heirs-at-law on grounds of fraud, where that instrument has been placed of record and the claiming heirs knew or in law were bound to know of the conveyance, is tantamount to a claim or demand to a portion of the decedent's estate and must be filed in the probate court within the time specified in the nonclaim section of the code (G. S. 1947 Supp. 59-2239). Even so, the decisions above cited, and others not mentioned but susceptible of the same construction, do not go to the extent or have the force and effect indicated by appellees. In the interest of clarity we feel impelled to point out that none of them goes so far as to hold, that where assets of an estate with or without administration and absent knowledge express or implied on the part of heirs-at-law, have been fraudulently concealed and secreted or for any other reason have escaped administration because not known to be part of the assets of an estate, there cannot be an opening up of administration proceedings in an estate that has been administered and closed or administration of an estate on which there has been no administration at all to the end that all assets thereof can be ascertained and determined. This notwithstanding there has been no administration of the involved decedent's estate within one year after the date of his death.

The judgment of the district court is reversed with directions to dismiss the action.