No. 97,664

ALBERT H. NELSON, III, and MARKEYTA NELSON DEWEY, *Appellants*, v. DORIS H. NELSON; OKLAHOMA STATE UNIVERSITY FOUNDATION, an Oklahoma Non-profit Corporation; WICHITA STATE UNIVERSITY FOUNDATION, a Kansas Non-profit Corporation; and MARKEYTA NELSON DEWEY, in her capacity as Successor Trustee of the ALBERT H. NELSON, JR., IRREVOCABLE TRUST, *Appellees*.

(205 P.3d 715)

Opinion filed April 17, 2009.

*William P. Tretbar*, of Fleeson, Gooing, Coulson & Kitch, L.L.C., of Wichita, argued the cause and was on the brief for appellants.

*Coy M. Martin*, of Moore Martin, L.C., of Wichita, argued the cause, and *Ted D. Ayres*, of Wichita State University Foundation, *Robert W. Coykendall*, of Morris Laing Evans Brock & Kennedy, Chtd., of Wichita, and *Scott D. Jensen*, of Bever Dye, L.C., of Wichita, were with him on the brief for appellees.

The opinion of the court was delivered by

LUCKERT, J.: This appeal raises the question of whether a claim must be made against a decedent's estate when it is alleged the decedent breached a contract to place his entire estate in a testa-

mentary trust for the benefit of his adult children. The district court and the Court of Appeals in *Nelson v. Nelson*, 38 Kan. App. 2d 64, 162 P.3d 43 (2007), held the decedent's assets were not subject to a constructive trust because a claim had not been made against the decedent's estate within the period of limitations imposed by the Kansas nonclaim statute, K.S.A. 59-2239. Upon review of those decisions, we affirm.

## Background

Albert H. Nelson, III, and Markeyta Nelson Dewey (Appellants) are the adult children of Margaret Nelson and Albert H. Nelson, II (Albert). After 33 years of marriage, Margaret and Albert divorced in 1975. Paragraph 9 of their property settlement agreement provided:

"Husband further covenants and agrees with Wife that Husband will execute and maintain, in full force and effect, a Will creating a testamentary trust to be funded by and with Husband's entire estate. Said trust will provide that the two (2) children of the parties hereto shall receive one-half (½) of the income from the trust after deduction of all taxes, debts, costs and expenses of administration; provided, however, that upon the death of either such child, said child's share of income shall be paid to the surviving child; provided, further, that the remaining debt, if any, of Husband to Wife under paragraph 2 hereof shall be deducted from the amount otherwise distributable to said children or child from said trust. The payments to said children or child shall be made not less often than annually."

The property settlement agreement was approved by the district court and incorporated by reference as part of the journal entry and decree of divorce. There is, therefore, no dispute about the existence of the contract. Rather the parties argue over the meaning of the term "entire estate." The Appellees suggest the agreement relates to probate assets only, and the Appellants suggest the parties intended to include probate and nonprobate assets. The Appellants contend their father violated the clear meaning of this term by gifting substantial amounts of property that should have been preserved for the Appellants' benefit and by not including his entire estate in a testamentary trust for their benefit.

Regarding the gifts, Appellants complain about substantial donations their father made to the Oklahoma State University Foundation and gifts he made to his second wife, Doris. Albert and

Doris were married approximately 3 years after his divorce from Margaret, and they remained married until his death in 2003. Albert's first substantial gift to Doris was made in May 1987 when Albert deeded to Doris the real estate on which his business, Globe Engineering Co., Inc., operated; the deed stated the consideration as "one dollar and love and affection." Subsequently, Globe paid rent to Doris for its use of the property. In addition, in October 1990, Albert and Doris purchased a residence in Florida, and a warranty deed conveyed the Florida property solely to Doris. Albert also designated Doris as the surviving beneficiary of his pension fund.

In addition to complaining about these "gifts," the Appellants assert their father breached the property settlement agreement and divorce decree by not placing his remaining assets in a testamentary trust for their benefit. At the time of his death, Albert's estate plan consisted of two inter vivos trusts and a pour-over will, as opposed to the will and testamentary trust contemplated by the settlement agreement. The change in form is not the source of the complaint, however. Rather, Appellants complain that Albert made them beneficiaries of only one of the two inter vivos trusts he had funded during his lifetime and, thus, failed to designate them as beneficiaries of one-half of the income of his entire estate or an equivalent value in corpus.

The inter vivos trust that benefits the Appellants is designated the Albert H. Nelson, Jr., Living Trust (living trust). Under the trust agreement, Albert served as trustee during his lifetime and Doris was designated the successor trustee upon Albert's death or disability. Albert had discretion during his lifetime to pay himself all or part of the income or principal of the trust. Upon Albert's death, one-half of the assets were to be held in the Doris H. Nelson Income Trust (income trust) and the other half of the assets were to be held in trust for the Appellants. The Appellants were to receive an annuity equal to six percent of the net fair market value of the assets held in trust for them. The annuity was to be divided in equal shares between the Appellants; if one of the Appellants died, the entire annuity was to be distributed to the survivor. The length of the annuity distribution was capped at 16 years to comply

with charitable trust requirements. Upon the death of both Appellants, the remaining assets were to be distributed to Oklahoma State University Foundation and Wichita State University Endowment Association in equal shares. Likewise, upon Doris' death, the remainder of the assets in the income trust were to be distributed equally between Oklahoma State University Foundation and Wichita State University Endowment Association.

The second inter vivos trust was named the Albert H. Nelson Irrevocable Trust (irrevocable trust), with Doris designated as trustee and Albert's daughter, Markeyta Nelson Dewey, designated as successor trustee. All trust income and, if necessary, the principal were to be paid to Doris for the rest of her life. Upon Doris' death, the remaining assets were to be distributed equally between Oklahoma State University Foundation and Wichita State University Endowment Association. The irrevocable trust authorized the trustee to sell, assign, convert, convey, or dispose of assets in the trust.

Several months after establishing the living trust and the irrevocable trust, Albert conveyed all of his stock in Globe to the two trusts in roughly equal shares. Later, all Globe shares owned by both trusts were sold to the Globe employee stock ownership plan.

Albert subsequently died in Florida on June 19, 2003. Although Albert's pour-over will provided for the delivery of any assets owned by Albert at his death to the trustee of the living trust, there were no estate assets subject to the effects of the will because Albert held all of his legal interests in property as a trustee, joint tenant, or beneficiary of a profit sharing plan.

Shortly after Albert's death, Albert's attorney wrote the Appellants, referencing paragraph 9 of the 1975 property settlement agreement and enclosing a copy of Albert's will and the living trust. The letter explained that certain items of personal property and the residence that were referenced in the trust agreement were actually owned by Doris and, therefore, were not part of Albert's estate. The attorney did not inform the Appellants about the irrevocable trust, and they did not learn of its existence until they received the estate's tax return.

Soon after becoming aware of the second trust, the Appellants filed this suit in April 2005. This was the first claim to any assets outside the living trust. The Appellants had not taken any action to file a petition for administration of an estate in Kansas and had not filed a claim against Albert or his estate in Florida.

When this action began, Markeyta was listed as one of the defendants because she was successor trustee of the irrevocable trust. Several months later, Intrust Bank, N.A., was substituted as trustee to the irrevocable trust and became a defendant in the lawsuit. Then, during the pendency of this appeal and upon Doris' death, Carl B. Simonye, her personal representative under letters of administration issued by the Circuit Court of Manatee County, Florida, on July 18, 2008, was substituted as a party.

In proceedings before the district court, the Appellants filed a motion for partial summary judgment, arguing they were entitled to an order imposing a constructive trust on a portion of the assets Albert had transferred to Doris. The Appellants also argued they were entitled to an order requiring Doris to account for income generated since Albert's death by the "gifted assets." Finally, the Appellants seek a money judgment against Doris for the amount they should have received under the 1975 property settlement agreement and any income that would have been produced since Albert's death "but for his substantial gifts to others."

The Appellees, in addition to responding to the Appellants' motion for partial summary judgment, filed a cross-motion in which they argued the Appellants' claims failed as a matter of law for the following reasons: (1) The property settlement agreement did not impose the contractual duties identified by the Appellants, let alone contractual duties that would bind any of the Appellees; (2) the Appellants' claims were barred or limited by the 5-year statute of limitations relating to an action founded on contract; (3) the Appellants' claims, *i.e.*, demands against Albert's estate, were barred for untimeliness under K.S.A. 59-2239; and (4) the Appellants' legal construction of the 1975 property settlement agreement constituted an attempt to modify or vacate a judgment in violation of K.S.A. 60-260.

In an October 2006 memorandum decision, the district court denied the Appellants' motion for partial summary judgment and granted the Appellees' motion for summary judgment. The district court observed that the essence of the Appellants' lawsuit was that Albert breached the 1975 property settlement agreement by failing to execute an estate plan consistent with its terms. The court found that because Albert was the party alleged to have breached the property settlement agreement, the claims should have been brought against Albert's estate, which the Appellants failed to do. Thus, the Appellants failed to meet the temporal requirements of K.S.A. 59-2239, the Kansas nonclaim statute.

The Court of Appeals affirmed, determining that (1) the Appellants' claims based upon Albert's breach of the 1975 property settlement agreement should have been brought against Albert's estate; (2) the tort exception of the Kansas nonclaim statute, K.S.A. 59-2239(2), was inapplicable, and the claims were barred under K.S.A. 59-2239(1); (3) the Appellants were not entitled to a constructive trust; and (4) alternatively, the claim was barred by the statute of limitations applicable to claims for breach of contract. *Nelson*, 38 Kan. App. 2d at 72-85.

We granted the Appellants' petition for review and a petition seeking review of another Court of Appeals decision, *Estate of Draper v. Bank of America*, 38 Kan. App. 2d 183, 164 P.3d 827 (2007), which raises similar issues involving the Kansas nonclaim statute and constructive trusts. See *Estate of Draper v. Bank of America*, 288 Kan. 510, 205 P.3d 698 (2009).

## Analysis

Before this court the Appellants argue that "[t]his is not an action for breach of contract against Albert H. Nelson, Jr., deceased, or his estate"; they argue, instead, this is solely an "action for equitable relief" in which they seek the "imposition of a constructive trust" against property held by Doris. Thus, according to the Appellants, it was neither necessary nor appropriate to bring suit against Albert's estate and the nonclaim statute does not apply.

Before addressing the merits of Appellant's arguments, we note that neither party suggests the issues in this case are governed by

Florida law, even though Albert died in Florida and his estate was probated there. While there is some citation to Florida law in various briefs, the parties do not address the choice of law issue and, as a result, that issue is waived. See *Cooke v. Gillespie*, 285 Kan. 748, 758, 176 P.3d 144 (2008) (issue not briefed is deemed waived or abandoned). Consequently, we will limit our consideration to Kansas law.

Standard of Review

Our standard of review is governed by the rules relating to summary judgment and statutory interpretation. The standard applying to an appeal from summary judgment is well settled:

"Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied." *Miller v. Westport Ins. Corp.*, 288 Kan. 27, Syl. ¶ 1, 200 P.3d 419 (2009).

To the extent there is no factual dispute, appellate review of an order granting summary judgment is unlimited. *Polson v. Farmers Ins. Co.*, 288 Kan. 165, Syl. ¶ 1, 200 P.3d 1266 (2009).

A de novo standard also applies to an appellate court's examination and interpretation of statutes. *Polson*, 288 Kan. at 168. This standard governs our analysis of the Kansas nonclaim statute, K.S.A. 59-2239, which was the focus of the district court's and Court of Appeals' rulings.

Remedy of Constructive Trust

We first consider the Appellants' assertion that this is an equitable in rem action seeking a constructive trust, not a breach of contract action or other action against Albert or his estate. The

Appellants urge this court to define whether an action to impose a constructive trust is a procedural aid in execution—*i.e.*, a remedy—or a "free-standing" cause of action. Arguing that a request for a constructive trust should be considered a separate claim upon which relief can be granted, the Appellants suggest: "Doris paid nothing for the property she received and is not a *bona fide* purchaser for value. This is all that need be shown."

We reject the Appellants' argument. Simply put, "[t]he constructive trust, like its counterpart remedies 'at law,' is a remedy for unjust enrichment." 1 Dobbs, Law of Remedies § 4.3(2), p. 597 (2d ed. 1993); see Restatement of Restitution: Quasi Contracts and Constructive Trusts § 160, comment a (1936) (Restatement of Restitution). This view is widely and uniformly accepted. *Crosby v. Bowater, Inc. Retirement Plan*, 382 F.3d 587, 594 (6th Cir. 2004) (constructive trust is an equitable remedy, not a claim in its own right); *Horattas v. Citigroup Financial Markets Inc.*, 532 F. Supp. 2d 891, 897 (W.D. Mich. 2007) (same); *In re Amcast Indus. Corp.*, 365 B.R. 91, 123 (Bankr. S.D. Ohio 2007) ("requests for an accounting and imposition of a constructive trust do not describe independent causes of action"); *Gulf States Steel, Inc. v. Lipton*, 765 F. Supp. 696, 704 (N.D. Ala. 1990) ("the court's research reveals no case in any jurisdiction [holding] that constructive trust constitutes a cause of action"); *Fujisawa Pharmaceutical. Co., Ltd. v. Kapoor*, 16 F. Supp. 2d 941, 952 (N.D. Ill. 1998) (constructive trust is a remedy, not a claim; remedy may be requested if plaintiff prevails on claims for which constructive trust is appropriate remedy); *Radenhausen v. Doss*, 819 So. 2d 616, 620 (Ala. 2001) ("The [defendants] correctly assert that a constructive trust is an equitable remedy; and a request to impose such a trust is not a cause of action that will stand independent of some wrongdoing.").

In addition, Professor Dobbs refutes the Appellants' argument that the action is solely an in rem proceeding, explaining:

"[T]he constructive trust plaintiff who proves his claim by clear and convincing evidence wins an *in personam* order that requires the defendant to transfer legal rights and title of specific property or intangibles to the plaintiff. When the court decides that the defendant is obliged to make restitution, it first declares him to be constructive trustee, then orders him as trustee to make a transfer of the

property to the beneficiary of the constructive trust, the plaintiff." 1 Dobbs, Law of Remedies § 4.3(2), pp. 590-91.

The in personam nature of the action is necessary because legal title may be properly vested in a defendant even though the plaintiff may have an equitable claim on the property. "Equity's theory was that it did not decide title but acted *in personam*. It did not act on title or property but upon the person of the defendant, compelling him to follow good conscience rather than good title." 1 Dobbs, Law of Remedies § 4.3(1), p. 587. There is an in rem component to the remedy, however, because even though the unjust enrichment claim is in personam, the constructive trust remedy is res specific; a constructive trust is essentially a tracing remedy, allowing recovery of the specific asset or assets taken from the plaintiff, any property substituted for it, and any gain in its value. 1 Dobbs, Law of Remedies § 4.3(1), pp. 588-89.

The res specific nature of the remedy does not erase the need to establish an equitable basis in the property. Rather, it is only "[w]here a person holding title to property is subject to an *equitable duty* to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it, a constructive trust arises." (Emphasis added.) Restatement of Restitution § 160. Unjust enrichment arises when (1) a benefit has been conferred upon the defendant, (2) the defendant retains the benefit, and (3) under the circumstances, the defendant's retention of the benefit is unjust. *In re Estate of Sauder*, 283 Kan. 694, 719, 156 P.3d 1204 (2007).

Similarly, the fact that the property is in the hands of a third party does not erase the need to establish an equitable duty to return the property. The Restatement explains:

"(1) Where a person holding property in which another has a beneficial interest transfers title to the property in violation of his duty to the other, the transferee holds the property subject to the interest of the other, unless he is a bona fide purchaser.

"(2) Where the owner of property transfers it in fraud of third persons, the transferee holds the property subject to their claims, unless he is a bona fide purchaser." Restatement of Restitution § 168.

Thus, the Appellants must establish that Albert transferred the property in violation of a duty he owed to the Appellants or by committing fraud.

## Remedy Based Upon Fraud

In this case, the Appellees have argued the only way this equitable duty can be established is to prove actual or constructive fraud. They cite several Kansas cases that support this view, including this court's most recent statement in *Garrett v. Read*, 278 Kan. 662, 673-74, 102 P.3d 436 (2004), where we explained that "[t]o prove a constructive trust, there *must* be a showing of one of the two types of fraud: actual or constructive." (Emphasis added.) Similar statements can be found in other Kansas cases. *E.g., Moore v. State Bank of Burden*, 240 Kan. 382, 389, 729 P.2d 1205 (1986), *cert. denied* 482 U.S. 906 (1987); *Cousatte v. Lucas*, 35 Kan. App. 2d 858, 870, 136 P.3d 484 (2006); *Logan v. Logan*, 23 Kan. App. 2d 920, 926, 937 P.2d 967, *rev. denied* 262 Kan. 962 (1997); *Kampschroeder v. Kampschroeder*, 20 Kan. App. 2d 361, 364-65, 887 P.2d 1152, *rev. denied* 257 Kan. 1092 (1995); see also *Geer v. Cox*, 242 F. Supp. 2d 1009, 1024 (D. Kan. 2003) (recognizing Kansas law requires showing of " 'fraud, actual or constructive, some betrayal of confidence reposed or some breach of duty imposed . . . .' "); *James M. Caplinger, Chartered v. Lundgren*, 905 F. Supp. 876, 891 (D. Kan. 1995) (in Kansas, actual or constructive fraud is essential element of proving constructive trust).

Recognizing this line of cases, the Appellants respond with two alternative arguments. First, they argue that they alleged fraud, both actual and constructive. Second, they cite to Kansas cases that recognize a constructive trust can be imposed when a claim is based upon a theory other than actual or constructive fraud.

## Appellants' Claim

In urging us to view their petition as having pled fraud, the Appellants suggest that their having sought a constructive trust enlarges the nature of their claim. To some extent, this argument relates to the Appellants' suggestion that a request for a constructive trust is an independent theory of recovery. As previously dis-

cussed, courts uniformly reject this view. See *One-O-One Enterprises, Inc. v. Caruso*, 668 F. Supp. 693, 696 n.1 (D. D.C. 1987) ("Although plaintiffs pleaded a fifth count of constructive trust, it is a remedy, not a claim upon which relief may be granted."), *aff'd* 848 F.2d 1283 (D.C. Cir. 1988).

In addition, Appellants' argument fails because a specific claim cannot be inferred simply because of the remedy requested—*i.e.*, it does not necessarily follow that the remedy proceeds a specific claim or that a specific claim gives rise to a specific remedy. See Rheinstein, *Critique: Contracts to Make a Will*, 30 N.Y.U. L. Rev. 1224, 1231 (1955) (in cases seeking recovery for alleged breach of contract to devise property a wide variety of remedies are available, and "it is neither necessary nor helpful to speak of the imposition of a trust, constructive or otherwise; the common rules on the grant of equitable remedies in the case of inadequacy of the remedy at law suffice for all legitimate purposes").

Rather, " '[t]he nature of a claim—whether it sounds in tort or contracts—is determined from the pleadings [citations omitted] and from the real nature and substance of the facts therein alleged.' [Citation omitted.]" *Bonin v. Vannaman*, 261 Kan. 199, 209, 929 P.2d 754 (1996). The Appellants' petition states:

"Mr. Nelson breached the property settlement agreement when he created the irrevocable trust and conveyed assets to said trust, when he conveyed the joint tenancy assets to himself and Doris, when he named Doris the beneficiary of his interest in the profit sharing plan and when he conveyed the real property to Doris for inadequate consideration."

The pretrial order is phrased in similar terms. Based upon these allegations, the district court correctly found, as did the Court of Appeals, that the basis of the Appellants' claim was Albert's alleged breach of the 1975 property settlement agreement, *i.e.*, Albert's failure to carry out an estate plan in accordance with paragraph 9 of the agreement. The language in the petition stating that the property settlement agreement was "breached" supports this view.

Nevertheless, the Appellants assert that by pleading the wrongful actions of Albert they have pled the elements of fraud, both actual and constructive. In response, the Appellees argue actual fraud must be pled with particularity. See K.S.A. 60-209(b); *Nich-*

*ols v. Kansas Political Action Committee*, 270 Kan. 37, 52-53, 11 P.3d 1134 (2000). Certainly, the Appellants have failed to meet the particularity requirements with regard to actual fraud. See *Kelly v. VinZant*, 287 Kan. 509, 515, 197 P.3d 803 (2008) (the elements of actual fraud are [1] a false statement of existing and material fact; [2] known to be false or made recklessly; [3] made intentionally for purpose of inducing another's action; [4] reasonable reliance on the statement; and [5] damage because of reliance).

Additionally, the Appellants did not plead the elements of constructive fraud. We have defined constructive fraud as

" ' "a breach of a legal or equitable duty which, irrespective of moral guilt, the law declares fraudulent because of its tendency to deceive others or violate a confidence, and neither actual dishonesty [n]or purpose or intent to deceive is necessary." ' [Citation omitted.] Two additional elements must also be proven in order to establish constructive fraud: (1) a confidential relationship, and (2) a betrayal of this confidence or a breach of a duty imposed by the relationship. [Citation omitted.]" *Schuck v. Rural Telephone Service Co.*, 286 Kan. 19, 26, 180 P.3d 571 (2008).

We note, however, that this court has not considered whether the heightened standard of pleading fraud with particularity applies when constructive fraud is being pled. Although a federal district court applying Kansas law regarding constructive fraud and the federal counterpart to K.S.A. 60-209(b)—Federal Rules of Civil Procedure (Rule) 9(b)—has stated that particularity is required when pleading constructive fraud (*Geer*, 242 F. Supp. 2d at 1024), there is a split of authority on the question. Compare, *e.g., 3D Global Solutions, Inc. v. MVM, Inc.*, 552 F. Supp. 2d 1, 8 (D. D.C. 2008) (dismissing constructive fraud claim for failure to satisfy particularity requirements of Rule 9[b]); *In re Merrill*, 343 Bankr. 1, 9 (Bankr. D. Me. 2006); *Town of Geraldine v. Montana Municipal Ins. Authority*, 347 Mont. 267, 198 P.3d 796, 801 (2008) (incorporating allegations of other counts and stating the " 'misleading behavior described above constitutes constructive fraud' " lacks particularity); *Mortarino v. Consultant Eng. Services*, 251 Va. 289, 295, 467 S.E.2d 778 (1996) (rejecting a claim for constructive fraud because the plaintiff "failed to plead, with the requisite degree of particularity, facts which support all the elements of [the] cause of

action") with, *e.g., In re Allou Distributors, Inc.*, 387 Bankr. 365, 385 (Bankr. E.D.N.Y. 2008) ("The particularity requirement of Rule 9[b] applies only if actual, as opposed to constructive, fraud is alleged."); *Cendant Corp. v. Shelton*, 474 F. Supp. 2d 377, 380 (D. Conn. 2007) ("Courts have not applied Rule 9[b] to claims of constructive, rather than actual, fraud."); *Rosales v. AT & T Information Systems, Inc.*, 702 F. Supp. 1489, 1498 (D. Colo. 1988) (adopting position that Rule 9[b] is inapplicable to constructive fraud claims); *Terry v. Terry*, 302 N.C. 77, 83, 273 S.E.2d 674 (1981) ("claim of constructive fraud does not require the same rigorous adherence to elements as actual fraud").

Ultimately, resolution of this question will involve discussion of the purpose and policy behind K.S.A. 60-208 and K.S.A. 60-209. See *Terry*, 302 N.C. at 83. We are reluctant to engage in that discussion or resolve the question in this case for several reasons. First, the parties did not acknowledge the lack of Kansas authority or the split in the cases in other jurisdictions. Consequently, we do not have the benefit of a parties' arguments as to which approach should be adopted. Second, we do not need to resolve the question because we are not considering a motion to dismiss based on the pleadings. Rather, the issue is raised through a motion for summary judgment that was filed after a pretrial order had been entered, and the pretrial order controls the subsequent course of the action. K.S.A. 60-216(e). That pretrial order does not contain any mention of a claim of constructive fraud—the elements of constructive fraud are not identified in either the questions of fact or issues of law to be determined in this action.

We, therefore, conclude that the Appellants have not asserted a claim of either actual or constructive fraud. Rather, as determined by the district court and the Court of Appeals, the Appellants' claim is for breach of contract.

## Is Fraud Required?

Given this conclusion, we must determine whether the Appellants' action fails—*i.e.,* must actual or constructive fraud be established in order for a constructive trust to be imposed? The Appellants argue that contrary to past statements such as the one in

*Garrett,* 278 Kan. at 673-74, requiring a finding of actual or constructive fraud, the remedy of a constructive trust can be imposed on other grounds. For example, this court has stated that a constructive trust can arise as a remedy for " 'fraud, misrepresentation, duress, undue influence or mistake of such a character that the transferor is entitled to restitution.' " *Horsley v. Hrenchir,* 146 Kan. 767, 769, 73 P.2d 1010 (1937). At other times the court has omitted references to mistake but has recognized a wide range of claims of wrongdoing as a basis for invoking the remedy of constructive trust, stating:

"A constructive trust, sometimes termed a trust *ex maleficio,* or *ex delicto,* arises in those cases where a person by fraud, actual or constructive, *or by any form of unconscionable conduct,* or questionable ethics has obtained or holds title to property which in equity and good conscience he ought not to possess or which justly belongs to another. [Citations omitted.]" (Emphasis added.) *In re Estate of Zimmerman,* 207 Kan. 354, 357, 485 P.2d 215 (1971).

Many other cases make broad statements regarding the nature of claims that can support a constructive trust remedy and recognize that actual or constructive fraud is not always required. *E.g., Witmer v. Estate of Brosius,* 184 Kan. 273, 279, 336 P.2d 455 (1959) ("It is frequently said that a constructive trust is imposed as a remedy for fraud. 'But there are numerous situations in which a constructive trust is imposed in the absence of fraud . . . .' 4 Scott on Trusts, [2d ed.] § 462, p. 3102."); *Titus v. Titus,* 151 Kan. 824, 825, 101 P.2d 872 (1940) (speaking broadly in terms of unjust enrichment); *Brogan v. Kreipe, Receiver,* 116 Kan. 506, 509, 227 P. 261 (1924) (" 'A constructive trust arises whenever another's property has been wrongfully appropriated and converted into a different form. . . . It is not essential for the application of this doctrine that an actual trust or fiduciary relation should exist between the original wrongdoer and the beneficial owner. Wherever one person has wrongfully taken the property of another and converted it into a new form, or transferred it, the trust arises and follows the property or its proceeds.' "); *Clester v. Clester,* 90 Kan. 638, Syl. ¶ 2, 135 P. 996 (1913) (stating that constructive trust arises "whenever the circumstances under which the property was acquired make it inequitable that it should be retained by the per-

son who holds the legal title"); *Hile v. DeVries,* 17 Kan. App. 2d 373, 374-75, 836 P.2d 1219 (1992) (declining to determine whether fraud is required to impose a constructive trust on insurance proceeds for a case in which the district court found equities required the imposition of a constructive trust).

Particularly relevant to this case are several prior decisions of this court that recognize a constructive trust is a possible remedy for breach of a contract to will property. For example, in *Anderson v. Anderson,* 75 Kan. 117, 123, 88 P. 743 (1907), the court stated:

" 'It is not claimed, of course, that any court has the power to compel a person to execute a last will and testament carrying out his agreement to bequeath a legacy, for this can be done only in the lifetime of the testator, and no breach of the agreement can be assumed so long as he lives. And after his death he is no longer capable of doing the thing agreed by him to be done. But the theory on which the courts proceed is to construe such an agreement, unless void under the statute of frauds or for other reason, to bind the property of the testator or intestate so far as to fasten a trust on it in favor of the promisee, and to enforce such trust against the heirs and personal representatives of the deceased, or others holding under them charged with notice of the trust.' [Citation omitted.]"

Many Kansas cases recognized this theory of recovery, with most of the cases arising before the use of trusts became common and during a time when a contract to bequeath or devise property was a more common form of estate planning and was "not infrequently made" in exchange for personal services. 2 Bartlett, Kansas Probate Law and Practice § 591, p. 127 (rev. ed. 1953) (discussing Kansas cases); see generally Bogert, Trusts and Trustees § 480 (rev. 2d ed. 1978 & 2008 Supp.); Rheinstein, 30 N.Y.U. L. Rev. at 1226; Note, *Two Problems in Contracts to Make a Will,* 57 Col. L. Rev. 1151 (1957).

According to these cases, in order for a constructive trust to be imposed, equity had to demand relief; there must have been clear and convincing proof of a contract—a certain and definite agreement to leave specific property by will and adequate consideration; and there had to be compliance with the statute of frauds. *E.g., Anderson,* 75 Kan. at 123; 2 Bartlett, Kansas Probate Law and Practice § 592. In addition, the more general considerations of a constructive trust required that the equitable redress must be

timely invoked, the fund or property must be clearly traced into the hands of some person who has received it, and the fund or property still must be in existence. See *Woods v. Duval*, 151 Kan. 472, 480-81, 99 P.2d 804 (1940) (not involving contract to will but stating principles). The primary consideration was whether there was an unjust enrichment and, as a result of applying equitable principles, the contract was not always enforced. See, *e.g.*, *In re Estate of Davis*, 171 Kan. 605, 612-13, 237 P.2d 396 (1951) (enforcement not matter of right but of equity; under facts of case, enforcement against interests of second wife would be inequitable); *Dillon v. Gray*, 87 Kan. 129, 135, 123 P. 878 (1912) (enforcement against wife who married without notice of agreement and who lived with and cared for husband would be inequitable); see generally Note, 57 Col. L. Rev. at 1153 (listing as equitable considerations spouse's rights; lack of surviving spouse's knowledge of agreement; duration of marriage to surviving spouse; consideration for agreement).

More recently, in *Salvation Army v. Estate of Pryor*, 1 Kan. App. 2d 592, 601, 570 P.2d 1380 (1977), the Court of Appeals recognized that an attempt to enforce a joint, mutual, and contractual will and impose a constructive trust could be based on several theories of recovery, including breach of contract, breach of fiduciary duty, actual or constructive fraud, or some other form of "unconscionable conduct."

Hence, as the parties to this appeal note, there is confusion in Kansas law regarding what must be established before the remedy of a constructive trust will be available. Although the more recent cases have required actual or constructive fraud, the cases recognizing a broader range of claims—including cases holding that a constructive trust can be imposed when property is not devised or bequeathed as agreed—have never been overruled or disapproved. In fact, it appears the two strands of cases have never been reconciled and only rarely have discussions acknowledged the two, divergent approaches in Kansas law.

One instance in which the divergent views was recognized is the Court of Appeals' decision in this case. The *Nelson* court cited two cases in which actual or constructive fraud was not required—*Hile*,

17 Kan. App. 2d 373, and *Tivis v. Hulsey*, 148 Kan. 892, 895, 84 P.2d 862 (1938). Faced with this court's clear statement in *Garrett*, 278 Kan. at 673-74, that actual or constructive fraud must be established, the panel distinguished *Hile* and *Tivis* on the grounds that those cases imposed a constructive trust on insurance proceeds. *Nelson*, 38 Kan. App. 2d at 77. Although we do not fault the Court of Appeals for grasping at the insurance distinction when faced with this court's apparently conflicting decisions, we discern no reason that the equitable concepts relating to the creation of a trust are different in *Hiles* and *Tivis* than in this case. In both *Hiles* and *Tivis*, a father breached his agreement to maintain life insurance coverage for the benefit of his children, and a trust was imposed upon the funds. Both courts reasoned that rival claims to insurance policy proceeds may become a contest settled by equity. In such a case, the proceeds of the policy become a trust fund that may be followed by the claimant who eventually establishes the right to equitable relief. *Tivis,* 148 Kan. at 895; *Hile*, 17 Kan. App. 2d at 375 (quoting *Tivis*, 148 Kan. at 895). The same reasoning underlies the competing claims in this case. The Appellants claim a right to the property as third-party beneficiaries of the contract, and the Appellees, who have done no wrong, stand ready to receive the assets as beneficiaries of a trust. Hence, both have a legal basis for their claims to the property, and equity must determine which claim prevails.

More generally, we are hard pressed to articulate any rationale for distinguishing between the two lines of cases. Further, we have found no explanation for why the two lines diverged, much less a reason that would justify continuation of the separate lines of analysis. We suspect that one reason two approaches developed may be that most cases, even those speaking in broader terms, are actually based upon claims of actual or constructive fraud. See, *e.g.*, *Clester*, 90 Kan. 638, Syl. ¶ 2.

A second reason for confusion may be that constructive trust cases, even those not based on fraud, have generally required clear and convincing evidence, which is the burden of proof required to prove fraud. See *Anderson*, 75 Kan. at 123; 2 Bartlett, Kansas Probate Law and Practice § 592; 1 Dobbs, Law of Remedies § 4.3(2),

pp. 590-91. This may have led to imposition of other fraud requirements, especially in light of the nature of constructive fraud which can encompass a broad range of equitable claims.

As we now consider which view should be followed, we note that the narrow view requiring actual or constructive fraud is contrary to the Restatement of Restitution: Quasi Contracts and Constructive Trusts § 160 (1936), and is rejected by commentators who recognize a variety of claims can establish the unjust nature of a defendant's rights to or title in property. For example, Professor Dobbs lists embezzlement, conversion, fraud, duress, undue influence, misuse or misappropriation of information, and infringement of copyright as some of the claims for which a constructive trust has been deemed an appropriate remedy. In addition, he notes that wrongdoing is not essential to the remedy arising; unjust enrichment may result from a mutual mistake of law in the formation of a contract or a constructive trust may be a necessary mechanism for the equitable division of marital property. 1 Dobbs, Law of Remedies § 4.3(2), pp. 597-98 (2d ed. 1993); see Restatement of Restitution § 160, comment c; Bogert, Trusts and Trustees § 471; 5 Fratcher, Scott on Trusts § 462 (4th ed. 1989). These commentators do note that some courts are more restrictive in recognizing the type of claims that may serve as a basis for a constructive trust, and often the more restrictive view requires a showing of fraud or constructive fraud. Bogert, Trusts and Trustees § 471, pp. 21-23 & 2008 Supp. pp. 54-55; 5 Fratcher, Scott on Trusts § 462, pp. 303-04; see 1 Dobbs, Law of Remedies § 4.3(2), p. 597. Generally, however, the more limited view is seen as a "misconception." 1 Dobbs, Law of Remedies § 4.3(2), p. 597.

Considering the approach of other courts, we find no reason to limit the availability of the constructive trust remedy in Kansas. Rather than being tied to the nature of the claim, the imposition of a constructive trust is a remedial device designed to prevent unjust enrichment by one who has an equitable duty to convey property to those to whom the property justly belongs. Additionally, the remedy is not easily obtained; the heightened clear and convincing burden of proof protects the interests of the property

holders who may be innocent of wrongdoing. *In re Estate of Zimmerman*, 207 Kan. at 357; see Restatement of Restitution § 160.

Hence, we conclude the view that actual or constructive fraud must be established before the remedy of a constructive trust can be granted is contrary to widely accepted analysis of the remedy and is not justified by Kansas law. To the extent that any case has held that actual or constructive fraud is the exclusive basis for the remedy of a constructive trust, we explicitly disapprove that holding.

## Kansas Nonclaim Statute

As a result, the Appellants may base their request for a constructive trust on their claim that Albert breached the property settlement agreement. Consequently, we must consider the questions of whether this action is a claim that must be brought against Albert's estate and, if so, whether that claim is barred by the Kansas nonclaim statute, K.S.A. 59-2239.

K.S.A. 59-2239(1) broadly encompasses "all demands" against an estate. In addition, it provides a mechanism for a creditor to petition for administration of a decedent's estate when no estate has been opened in Kansas, stating:

"All demands, including demands of the state, against a decedent's estate, whether due or to become due, whether absolute or contingent, including any demand arising from or out of any statutory liability of decedent or on account of or arising from any liability as surety, guarantor or indemnitor, and including the individual demands of executors and administrators, shall be forever barred from payment unless the demand is presented within the later of: (a) four months from the date of first publication of notice under K.S.A. 59-2236, and amendments thereto; or (b) if the identity of the creditor is known or reasonably ascertainable, 30 days after actual notice was given, except that the provisions of the testator's will requiring the payment of a demand exhibited later shall control. No creditor shall have any claim against or lien upon the property of a decedent other than liens existing at the date of the decedent's death, unless a petition is filed for the probate of the decedent's will pursuant to K.S.A. 59-2220 and amendments thereto or for the administration of the decedent's estate pursuant to K.S.A. 59-2219 and amendments thereto within six months after the death of the decedent and such creditor has exhibited the creditor's demand in the manner and within the time prescribed by this section, except as otherwise provided by this section."

The nonclaim statute recognizes that a decedent no longer has the individual capacity to respond in damages to torts, to pay debts, to carry out contracts, or to administer his or her estate; therefore, the estate must meet the decedent's financial obligations. *In re Estate of Reynolds*, 266 Kan. 449, 456-57, 970 P.2d 537 (1998). As a result, a person who seeks to recover from the decedent, whether based on tort, contract, the decedent's will, or the statute of intestate succession, must recover, if at all, from the decedent's estate. 266 Kan. at 456-57; *Burns v. Drake*, 157 Kan. 367, 369-72, 139 P.2d 386 (1943).

K.S.A. 59-2239 imposes a special statute of limitations governing such claims against a decedent's estate, and it operates as a complete bar to all demands against a decedent's estate that are not timely filed. *Union Nat'l Bank & Trust Co. v. Estate of Werning*, 233 Kan. 671, Syl. ¶¶ 1-3, 665 P.2d 192 (1983); Harris, *Survey of Kansas Law: Administration of Estates*, 17 Kan. L. Rev. 325, 328 (1968); see also 3 Bartlett, Kansas Probate Law and Practice §§ 1315, 1316 (rev. ed. 1953) (statute combines former nonclaim and limitations statutes).

Professor Bartlett, in his treatise on Kansas probate law, explains the purpose of and policy behind the nonclaim statute:

"An evident purpose of the statute is to protect the executor or administrator against stale claims and to enable him to close the estate and distribute the balance thereof without unnecessary delay. A primary purpose is the speedy settlement of the estates of deceased persons in the interest of creditors, heirs, legatees, and devisees, and to render certain the titles to real estate. A speedy administration of the estate is for the benefit of creditors, who have the priority of right; and, when their claims are satisfied, for the payment of legacies or distribution to the heirs. When beneficiaries or heirs succeed to the estate it should be to a title freed from the incumbrance of or liability to debts. In subservience to this purpose has been the uniform construction of these statutes, and especially of the statute of nonclaim. In the absence of this statute, a settlement of an executor or administrator and the payment of legacies or distributive shares would be attended with the peril of future litigation by creditors against the beneficiaries and distributees to subject their legacies or distributive shares to the payment of debts. In making distribution or paying legacies, the personal representative would act at his own hazard." 3 Bartlett, Kansas Probate Law and Practice § 1316.

See also *In re Estate of Tracy*, 36 Kan. App. 2d 401, 405, 140 P.3d 1045 (2006) (recognizing that primary purpose of K.S.A. 59-2239

is speedy settlement of estates in interest of creditors, heirs, legatees, and devisees and to settle titles to real estate).

This policy has been furthered by cases that have read the term "all demands" to be broadly inclusive of any and all claims, making exception only where a statute expressly provides otherwise. *Union Nat'l Bank & Trust Co.*, 233 Kan. 671, Syl. ¶ 2. One statutory exception is found in K.S.A. 59-2239(2); that exception extends the statute of limitations for tort claims. Because we have concluded that the Appellants failed to plead fraud and the Appellants do not suggest they have pled any other tort, the tort exception does not apply. There is no similar exception for contract claims; such claims must be brought within the nonclaim period of K.S.A. 59-2239(1).

This general rule requiring claims that the decedent breached a contract to be made against the estate within the nonclaims period has been applied when it is claimed a decedent breached a contract to make a will or devise property in a specified manner. As one authority explains:

"That a contract to make a will is a contract in the ordinary sense is of special importance in the case of its breach, which consists in the promisor's failure to have in effect at the time of his death a will corresponding to the terms of his promise. The ordinary remedy for such a breach is an action at law for damages, to be prosecuted against the estate of the promisor-decedent in the same manner as any other claim sought to be enforced against a decedent's estate, which means, among other things, that it is not to be paid out of the assets of the estate unless it has been filed within the period of the statute of nonclaims." Rheinstein, *Critique: Contracts to Make a Will*, 30 N.Y.U. L. Rev. 1224, 1231 (1955).

See also *Wilkison v. Wiederkehr*, 101 Cal. App. 4th 822, 829-30, 124 Cal. Rptr. 2d 631 (2002) (claim must be filed because "a final breach cannot be regarded as occurring until the death of the deceased, the breach was committed by the deceased, and the liability on account thereof is" the deceased's); *Shuck v. Bank of America, N.A.*, 862 So. 2d 20, 23 (Fla. Dist. App. 2003) ("If a decedent breaches a contract to make a will, the right being enforced is a contract right."); *Lindeburg v. Lindeburg*, 162 So. 2d 1, 3 (Fla. Dist. App.), *cert. denied* 166 So. 2d 754 (Fla. 1964) (husband can be required to answer personally through his estate for his breach of property settlement agreement).

Kansas appellate cases are in accord and have consistently held that an action to enforce an agreement to devise or bequeath a portion of the decedent's estate constitutes a claim against the estate. For example, in *In re Estate of Goodburn*, 210 Kan. 740, 746, 504 P.2d 612 (1972), this court held that "where a party seeks to enforce a contractual obligation to devise or bequeath a portion of a decedent's estate, the proceeding constitutes a demand against the estate and not a will contest." The holding in that case, however, answered a different question than presented here; the *Goodburn* court was asked whether the suit to enforce a contractual obligation to devise and bequeath one-half of the decedent's property to the petitioner was a demand on the estate or a will contest.

Five years later, in *Salvation Army*, 1 Kan. App. 2d 592, the Court of Appeals applied the *Goodburn* holding to an issue more similar to the issue in this case. The court held that a claim based upon a breach of a joint, contractual, and mutual will is barred by the nonclaim statute if not timely asserted. 1 Kan. App. 2d at 600-01.

In *Salvation Army*, the district court imposed a constructive trust on assets in an estate. The assets had been inherited by Agnes Pryor from her sister, Gussie McClure. McClure had allegedly violated a joint, mutual, and contractual will that had been probated on the death of her husband. Under the terms of the will, the surviving spouse held a life estate in the couple's assets and upon the survivor's death the remainder would be shared by several churches, charities, and institutions, including the Salvation Army. McClure, sometime after her husband's death, executed a new will in which she devised the bulk of her assets to Pryor, who was the decedent in the case before the court. The Salvation Army filed a claim in Pryor's estate; however, it had not filed a claim in the estates of either McClure or her husband. The Court of Appeals held the failure to make a claim against McClure's estate barred the recovery and reversed the district court's decision to impose a constructive trust. 1 Kan. App. 2d at 601-02, 606.

The Court of Appeals reached the same conclusion 12 years later in the case of *In re Estate of Pallister*, 13 Kan. App. 2d 337, 770 P.2d 494 (1989). Minne Pallister died in 1985, leaving two sons

and one granddaughter, Mary Louise Shull, as her sole heirs. The sons did not probate their mother's will which had left all property to the sons and had excluded Pallister's deceased daughter, who was Shull's mother. After the time for probate had passed, Shull brought a proceeding to claim her intestate share of her grandmother's estate. The two sons sought to probate and enforce the will as a valid contract in their favor.

The Court of Appeals affirmed the trial court's refusal to probate the will but reversed the trial court's decision to enforce the will as a contract. 13 Kan. App. 2d at 389-40. The Court of Appeals determined that although the will was an enforceable contract, it had to be brought within the nonclaim period as a contract claim against Pallister's estate. The court stated:

"While this case does present the issue of the determination of persons entitled to distribution of the estate, the trial court *sought to enforce a contract*, and the enforcement of a contract *against an estate* involves a claim. Thus, the trial court erred in enforcing a contract that is barred by the nonclaim statute." (Emphasis added.) 13 Kan. App. 2d at 339.

See also *In re Estate of Manweiler*, 185 Kan. 343, 342 P.2d 730 (1959) (spouse claiming decedent breached contract to will property properly brought demand against estate that was then transferred to district court for determination).

The Appellants attempt to distinguish these cases by seizing on three points: (1) The action was timely under the tort exception to the nonclaim statute, (2) a claim is not being made against assets "in" the estate and, therefore, the action would not reduce the estate, and (3) it would be futile to make a claim against the estate because there was no estate and no need to administer an estate because there were no probate assets.

Regarding the first point of distinction, the Appellants note that the *Salvation Army* court stated that K.S.A. 59-2239(1) only applied to contractual theories and did not necessarily preclude recovery on any other theory such as "breach of fiduciary duty, actual or constructive fraud, or some other form of unconscionable conduct." 1 Kan. App. 2d at 601. Because we have rejected the Appellants' argument that they have made a claim based in tort, this point of distinction does not advance Appellants' position.

As a second point of distinction, the Appellants note that the *Salvation Army* court cited *In re Estate of Welch*, 167 Kan. 97, 105, 204 P.2d 714 (1949), for its holding that the nonclaim statute applies " 'only to claims against the estate of a decedent, which, if allowed, will reduce the corpus of his estate or the amount of property which would otherwise be subject to division or distribution among the heirs of an intestate decedent or the legatees and devisees of a testate decedent as the case may be.' " *Salvation Army*, 1 Kan. App. 2d at 600. As the Appellants observe, similar statements can be found in many Kansas cases. *E.g.*, *In re Estate of Reynolds*, 266 Kan. at 455; *In re Estate of Goodburn*, 210 Kan. at 745 (quoting 2 Bartlett, Kansas Probate Law and Practice § 780 [rev. ed. 1953]); *In re Estate of Watson*, 21 Kan. App. 2d 133, Syl. ¶ 5, 896 P.2d 401 (1995).

This application of the nonclaim statute derives in part from a distinction made before our court system was unified. The distinction related to whether property was "in" the decedent's estate and the claim would remove property from the estate or whether the property was "outside" the decedent's estate and was being brought into the estate. Preunification cases followed the general rule that to take property out of an estate one had to proceed in probate court under the Probate Code; but to bring property into an estate, one had to proceed under the Code of Civil Procedure in the district court. See, *e.g.*, *In re Estate of Matthews*, 208 Kan. 492, 501, 493 P.2d 555 (1972); *In re Estate of Thompson*, 164 Kan. 518, 190 P.2d 879 (1948). After the unification of the Kansas court system resulted in all probate matters being handled in the district court, the preunification distinction in procedural rules and jurisdictional requirements was still applied to some extent; specifically, probate proceedings in the district court are governed by the Probate Code (K.S.A. Chapter 59) and other civil actions are generally governed by the Code of Civil Procedure (K.S.A. Chapter 60). *Gorham State Bank v. Sellens*, 244 Kan. 688, 695, 772 P.2d 793 (1989). The nonclaim statute is found in the Probate Code; thus, the distinction is still relevant in determining whether the nonclaim statute applies.

In the context of the nonclaim statute, the distinction was explained in *In re Estate of Pallister*, 13 Kan. App. 2d at 339. There the Court of Appeals stated that a claim must be made against the estate when it is asserted that the decedent breached a contract and, as a result, a transfer of property is void. On the other hand, a claim against the estate is not required if the property is in the estate and the controversy is " 'between contending heirs as to the proportionate share each will receive out of the decedent's estate.' " *Pallister*, 13 Kan. App. 2d at 339 (quoting *In re Estate of Welch*, 167 Kan. at 105); see also *In re Estate of Wright*, 170 Kan. 400, 404-06, 227 P.2d 131 (1951) (noting difference between a petition requesting administration of assets that had not been administered, which was not a claim, and petition alleging assets were not in estate because a transfer of title was void due to breach of contract, which was a claim). The Appellants' claim falls in the first category, meaning a claim must be made against the estate.

The Appellants insist these cases are still distinguishable because often these cases deal with assets which despite the alleged breach of contract are still "in" the estate. However, the Appellants fail to note that later in the *Salvation Army v. Estate of Pryor*, 1 Kan. App. 2d 592, 604, 570 P.2d 1380 (1977), albeit in dicta, the court acknowledged the executor's duty to marshal all assets that should be in an estate and available for distribution. See K.S.A. 59-1401 (imposing duty). Consistent with this distinction, in *Estate of Draper*, 288 Kan. 510, 530, 205 P.3d 698 (2009), we recognize the validity of an action brought by an administrator to marshal assets transferred by the decedent in violation of an antenuptial agreement. Through this power, property can be brought into the estate where a claim can be made and recovery may be allowed.

On the other hand, if the property is not brought into the estate, recovery may not be allowed. This point is illustrated by at least two cases, *Houdashelt v. Sweet*, 163 Kan. 97, 180 P.2d 604 (1947), and *Wright v. Rogers*, 167 Kan. 297, 205 P.2d 1010 (1949). In those cases, this court dismissed actions brought by heirs directly against those who held property that had been obtained via an allegedly void transfer. Even though the heirs were making claim to property outside the estate, in both cases the court found the proceeding

against the property holder was tantamount to a claim or demand to a portion of the decedent's estate and as such had to be filed in the probate court within the time provided by law. In *Houdashelt*, the court explained that the action was based upon fraud and undue influence, and if that allegation were true, the land was not legally conveyed and therefore remained an asset of the estate. 163 Kan. at 100; see *Wright*, 167 Kan. at 302.

The same rationale applies in this case. The Appellants have asserted that Albert breached the settlement agreement by transferring property to the trusts and, as a result, these transfers were void. If the transfers were found to be void, the property would pass through Albert's probate estate and be distributed according to his will.

Another reason justifies the requirement that this action be brought as a claim against the estate: Generally, equitable remedies are not available if there is an adequate remedy at law. See *Mid-America Pipeline Co. v. Wietharn*, 246 Kan. 238, 242, 787 P.2d 716 (1990). Under this principle, a claim must first be made against the one who violated a duty or, when that person is deceased, that person's representative—*i.e.*, an estate administrator—and a remedy at law must be unavailable before equitable relief is allowed. See *Wilkison*, 101 Cal. App. 4th at 828-33.

The discussion of this principle of equity is closely related to Appellants' third point of distinction, which is their argument that there was not an adequate remedy at law in this case because there was no estate in Kansas and no assets in the Florida estate to provide money damages. They further note that "[t]he law does not require the performance of a futile or useless act." *Anderson v. Dugger*, 130 Kan. 153, 156, 285 P. 546 (1930). However, these arguments do not account for K.S.A. 58a-505(a)(3), which provides that "the property of a trust that was revocable at the settlor's death is subject to claims of the settlor's creditors." Under this provision, the assets in Albert's revocable "living trust" could have been accessed to satisfy any meritorious, timely breach of contract claims against Albert's estate. Thus, the one-half of the trust that benefitted Ethel, and in turn other Appellees as remainder beneficiaries, could potentially have been available to the estate to satisfy the

Appellants' claim. In addition, as noted in our discussion of *Houdashelt*, the assets in the irrevocable trust would be in the estate if it were determined that the transfer of those assets was void. Consequently, although there were no assets in Albert's estate, an administrator would have the ability to marshal assets that should have been in the estate and these assets would be available to satisfy Appellants' claim. As a result, the policy behind the nonclaim statute is implicated and that procedure should be followed.

The fact that there was no Kansas estate does not change this outcome. When one claims property of an estate, the fact that an estate does not exist does "not relieve [a family member] or any other person having a claim upon the property of [the] estate from having an administrator appointed" under the provisions of K.S.A. 59-2239 and making a claim against the estate. *Gebers v. Marquart*, 166 Kan. 604, 609, 610, 203 P.2d 125 (1949); *Gantz v. Bondurant*, 159 Kan. 389, 394-95, 155 P.2d 450 (1945).

Consequently, we hold that the Appellants as third-party beneficiaries asserted a claim against the estate by alleging that Albert's transfers of assets to the trusts were a breach of the property settlement agreement and, therefore, the transfers were void. This claim against Albert's estate is barred by the Appellants' failure to exercise the right of creditors to open an estate and make a timely claim as required by K.S.A. 59-2239(1).

Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.