NOT DESIGNATED FOR PUBLICATION

No. 112,145

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

NORTH AMERICAN SAVINGS BANK, FSB,
*Appellant*,

v.

DOUGLAS O. VOLKLAND, as Trustee of
the E. KEITH VOLKLAND and ANNA W. VOLKLAND TRUST of 1985
and/or the VOLKLAND FAMILY TRUST,
*Appellees*.

MEMORANDUM OPINION

Appeal from Johnson District Court; Thomas M. Sutherland, judge. Opinion filed October 2, 2015. Affirmed and remanded with directions.

*Thomas M. Franklin*, of The Franklin Law Firm, of Kansas City, Missouri, for appellant.

*Kevin J. Odrowski*, of Kansas City, Missouri, for appellee.

Before PIERRON, P.J., MCANANY, J., AND BURGESS, S.J.

*Per Curiam*: In 2004 and 2006, E. Keith Volkland signed a guaranty as an individual to two separate notes that his son Douglas O. Volkland and Douglas' wife, Janet Swinson, had taken out with North American Savings Bank (NASB). As proof of his financial health, Keith provided financial statements that listed various accounts and certificates of deposit. Many of the assets were actually titled to the Volkland Family Trust, Keith's revocable trust. Keith's death in 2012 triggered a default of both notes. NASB accelerated one note and the second matured. After NASB made a demand on the

notes and accelerated them, Douglas and Janet stopped paying on the first note and failed to pay back the second note.

Six months and a few days after Keith died, NASB filed a petition against Douglas as trustee of the family trust seeking declaratory judgment that it could reach trust assets to satisfy Keith's indebtedness under the guaranties. NASB also requested the court to order Douglas as trustee to pay the amount due under the notes, which was roughly $800,000. NASB sued under the trust code, not the probate code. The trustee asserted a defense under the probate code. The trustee claimed the nonclaim statute, which required a creditor to make a demand on the decedent's estate within 6 months of the decedent's death, forever barred the suit because NASB failed to make a demand on Keith's estate within 6 months of Keith's death.

Both parties filed for summary judgment. The district court denied NASB's motion and granted the trustee's. The court determined the trust code was merely a vehicle for payment, not an independent cause of action to obtain a judgment, and determined NASB had failed to establish that Keith's probate estate was insufficient to satisfy the indebtedness as required by the trust code. The court granted the trustee's motion for the same reasons.

After a bench trial, the district court ruled in favor of the trustee and determined NASB could not reach trust assets because it failed to prove the probate estate was insufficient to satisfy the indebtedness and because the trust code was merely a right to payment, not an independent cause of action to obtain a judgment allowing a creditor to obtain a money judgment against a deceased settlor's revocable trust assets.

NASB appeals all adverse rulings. Finding no error, we affirm.

Before the district court, NASB pursued two separate cases related to the notes and mortgages at issue here in an effort to satisfy the debt owed by Douglas and Janet. The cases were never consolidated but were tried together and are considered companion cases. This appeal, No. 112,145, focuses on NASB's unsuccessful attempt to reach trust assets in 12-CV8619. The companion case, 12-CV-9467, dealt with NASB's petition to foreclose on the mortgages and sell the collateral to satisfy the indebtedness. It too is being appealed in this docket, captioned *North American Savings Bank vs. Douglas O. Volkland*, No. 112,097.

This particular case takes us to the murky intersection of the trust code and the probate code.

*The Volkland Family Trust*

In 1985, Keith and his wife Anna, who is now deceased, executed their revocable trust, originally the "Keith Volkland and Anna W. Volkland Trust of 1985." In 1999, after Anna's death, Keith amended the trust, commonly referred to as the "Volkland Family Trust." The trust was a revocable living trust for the purposes of avoiding probate at Keith's death, avoiding death taxes, managing his financial affairs should he become disabled, and planning for the orderly distribution of his assets upon his death. It was to be governed by the law of California "unless otherwise expressly provided." The trust indicated that Schedule A listed the trust estate, but Schedule A is not in the record so the contents of the trust are unknown. The trust provided that Douglas was Keith's sole child, living or deceased, and that Keith was unmarried.

The trust provided that upon Keith's death, the trustee could pay any of his debts but was not directed to. The trust indicated that a life estate in a residence would go to a woman named Hattie V. Baxter but it is undisputed that she died prior to Keith's death. It

3

was provided that the "rest, residue, and remainder of the trust estate shall be allocated to the Trustor's son, Douglas O. Volkland."

The trust provided that the share allocated to any beneficiary under the age of 25 would be held until the beneficiary turned 25. However, once the beneficiary turned 25, "the trust shall terminate and the Trustee shall distribute the then remaining trust estate (including any accumulated income), outright and free of trust, to the beneficiary." Douglas was named as the successor trustee.

In 2004, Douglas and Janet executed a promissory note (Note 1) for $590,000 payable to NASB. Keith also personally guaranteed Note 1. The guaranty provided that Keith "unconditionally guarantee[d] the payment and performance, upon demand, of all Obligations of Borrower to Lender." Keith was required to provide financial statements at least once a year. The guaranty also indicated it was governed by the laws of Missouri.

The financial statements Keith provided to NASB for years 2004, 2005, 2006, and 2008 are included in the record. The 2004 statement indicates he had in excess of $1.8 million in assets. Proof of his various assets included in the record on appeal indicate the assets were actually titled in the trusts name, not Keith personally. For example, the 2006 statement lists a certificate of deposit worth $100,000 with Heartland Bank as an asset, but the actual certificate of deposit indicates it was an asset of the Volkland Family Trust, not Keith personally.

In 2006, Douglas and Janet executed a second promissory note (Note 2) for $155,000 payable to NASB. Note 2 originally matured on February 1, 2007. The parties agreed to extend the maturity date on more than one occasion, and its final maturity date was in October 2012. Documentation of these extensions is not included in the record on appeal for this case, but it is included in the companion case record on appeal. Note 2 included the same provisions regarding occurrences which constituted a default.

4

Douglas and Janet signed a second mortgage (Mortgage 2) with NASB. Mortgage 2 covered three tracts of land: the Moonlight Road Tracts; and "Tract III: Lot 425, Leawood Estates, a subdivision in the City of Leawood, Johnson County Kansas." Tract III's address was 9714 Belinder (Belinder House). Keith also guaranteed Note 2.

It appears Douglas and Janet generally paid their payments on time.

In 2009, Keith resigned as sole trustee and Douglas immediately became the sole trustee since Hattie Baxter had died in 2002. On May 4, 2012, Keith died. On May 14, 2012, Douglas emailed Michael Braman, an employee of NASB, to inform him of Keith's passing.

On September 18, 2012, Braman emailed Douglas indicating that they needed to discuss curing the default triggered by Keith's death. Attempts to negotiate a modification to cure the default were fruitless. Douglas and Janet never cured the default.

On November 5, 2012, 6 months and a few days after Keith died, NASB filed a petition for declaratory judgment against Douglas as trustee of the Volkland Family Trust in Johnson County case No. 12-CV-8619. NASB did not bring suit against Keith individually or his estate, or against Douglas as an individual, nor did NASB open a probate estate of Keith's estate. On December 7, 2012, NASB also brought a foreclosure action against Douglas and Janet in Johnson County companion case No. 12-CV-9467. The two cases were never consolidated, but the district court held a bench trial on the cases together and issued a single journal entry. The ruling in 12-CV-9467 is also on appeal in this docket in case No. 112,097.

NASB's declaratory petition against Douglas was brought under the Kansas Uniform Trust Code. It sought a declaration of Douglas' duty to pay NASB's claim from

5

the trust assets and an order that Douglas pay NASB's claim. Specifically, NASB brought the action under K.S.A. 58a-505(a)(3). K.S.A. 58a-505 governs a creditor's claims against a settlor, and provides:

> "After the death of a settlor, and subject to the settlor's right to direct the source form which liabilities will be paid, the property of a trust that was revocable at the settlor's death is subject to claims of the settlor's creditors . . . to the extent the settlor's probate estate is inadequate to satisfy those claims . . . ." K.S.A. 58a-505(a)(3).

Douglas filed an answer asserting the affirmative defense that NASB's claim violated K.S.A. 59-2239. K.S.A. 59-2239 is known as a nonclaim statute. It governs when demands can be made against a decedent's estate. In relevant part, it provides:

> "No creditor shall have any claim against . . . the property of a decedent . . . unless a petition is filed for the probate of the decedent's will . . . within six months after the death of the decedent and such creditor has exhibited the creditor's demand in the manner and within the time prescribed by this section, except as otherwise provided by this section." K.S.A. 59-2239(1).

On June 13, 2013, NASB filed a motion for summary judgment and a memorandum in support. NASB argued it was entitled to summary judgment because Keith, the settlor of the trust, had given NASB guaranties on two loans made to Douglas and Janet and "advised he would be able to pay under the loan guaranties with his assets in the revocable trust." Therefore, Keith was obligated to the notes under the guaranties. Keith's death triggered the default of the loan. NASB indicated Douglas had failed to make the payments due even though the trust assets appeared to exceed $2 million dollars. NASB argued there was not a genuine issue of material fact for which NASB would have the burden at trial, and therefore it was entitled to judgment as a matter of law. NASB indicated the amount due on Note 1 and Note 2 was $791,434.36 on that date.

6

NASB cited only Kansas law in its motion. NASB relied most heavily on *Commerce Bank, NA v. Bolander*, 44 Kan. App. 2d 1, 13, 239 P.3d 83 (2007) for support of its argument that it was entitled to judgment under K.S.A. 58a-505(a)(3). In summary, the *Commerce Bank* court affirmed the trial court's decision allowing Commerce Bank to seek trust assets to satisfy an unpaid promissory note executed by the settlor even though the settlor's estate had not been fully administered.

Here, in response, Douglas maintained the argument that the action was time barred by the nonclaim statute. Douglas cited only Kansas authority. Douglas also distinguished *Commerce Bank* from the facts here. Most notably, Douglas argued that in *Commerce Bank*: (1) a probate estate was opened for the settlor; and (2) the bank filed a claim against the estate within the proper claim period of the nonclaim statute. Douglas argued that before a creditor could seek assets of a deceased settlor's revocable trust, the creditor must have first filed a claim in compliance with the nonclaim statute, K.S.A. 59-2239.

On July 11, 2013, Douglas filed a motion for summary judgment and memorandum in support. The arguments were substantially the same as those from the Douglas' response to NASB's motion for summary judgment. Douglas argued the nonclaim statute, K.S.A. 59-2239 and the trust code must be read in harmony. A creditor could seek to satisfy a judgment from revocable trust assets after a settlor's death *only after a probate estate is opened on behalf of the decedent*. Douglas argued that NASB's claims were barred by the nonclaim statute because its petition was filed more than 6 months after Keith's death.

On July 29, 2013, NASB filed a reply in further support of its motion for summary judgment. NASB attempted to clarify that by pursuing a claim via the trust code, it was not making a claim "against the decedent's estate" for purposes of K.S.A. 59-2239. NASB differentiated between claims brought under the trust code and claims brought

7

under the probate code. It also argued the guaranties Keith signed indicated they were binding on his heirs, making Douglas, as trustee, liable. NASB also argued Douglas failed to comply with the notice requirements of K.S.A. 59-2239 and that the guaranties included waivers of certain defenses: statute of limitations, failure to file a probate claim, or discharge.

On August 5, 2013, NASB filed its response in opposition to Douglas' motion for summary judgment. In it, NASB adopted the arguments made in its reply to Douglas' motion for summary judgment.

On August 27, 2013, the district court issued its memorandum decision regarding both motions for summary judgment. The court denied NASB's motion and granted Douglas' motion. The court held that in order to "take advantage of K.S.A. 58a-505(a)(3), . . . the settlor's probate estate must be inadequate to satisfy the claim." Because NASB presented no evidence regarding the substance of Keith's probate estate—and the parties seemed to agree that no probate estate was ever opened—the court determined NASB was not entitled to summary judgment. The court did not go so far as to hold that all of NASB's rights as a creditor had expired because it believed this was "an issue for the Probate Court to determine if and/or when a claim [was] made against E. Keith Volkland's estate."

The district court also expressed concern that both parties presented their arguments pursuant to Kansas law even though the trust clearly indicated California law governed. However, the court independently reviewed the California probate code and determined the law was substantively the same. Therefore, the court determined it was irrelevant which law the court applied. The court granted Douglas' motion for summary judgment for the same reasons.

Still, neither party opened a probate estate.

8

On November 18, 2013, the district court issued its pretrial order. NASB's legal theories remained the same—it had rights under K.S.A. 58a-505(a)(3) to collect on guaranties Keith made to NASB, but it expanded on this argument. NASB requested a judgment ordering the trustee to pay the claims or to impose a constructive trust. NASB further requested to amend the pleadings as necessary to obtain the requested relief.

Douglas contended NASB could not sustain its burden to prove it was a creditor of Keith on the date the petition was filed—November 5, 2012—because NASB failed to open a probate estate for Keith within 6 months of Keith's death on May 4, 2012 as required by K.S.A. 59-2399. Douglas further argued that because NASB failed to name Keith or his estate as a party to this case, there could be no adjudication of a claim against Keith in this suit.

The parties stipulated to many facts, including the validity of Notes 1 and 2, Mortgages 1 and 2, and that Keith signed guaranties for Notes 1 and 2. They also agreed Keith had been the sole trustee of the Volkland Family Trust. In 2009, Keith executed a durable power of attorney granting Douglas full power over Keith's assets. Douglas was also designated as the sole trustee of the trust. He was also the sole beneficiary of the trust. As indicated above, Keith died May 4, 2012 and was unmarried.

The parties also identified numerous disputed questions of fact and mixed questions of fact and law. NASB's issues included whether Keith had a will and why it had not been submitted to probate, and what the value of Keith's nontrust probatable assets was 6 months after his death.

Douglas' issues of fact included whether NASB was Keith's creditor on the date the petition was filed, and whether Keith's probate estate was sufficient to satisfy the indebtedness to NASB.

9

NASB also provided the following issues of law: Whether Kansas law was contrary to California law with respect to the payment of creditors for claims against revocable trust assets; which state's law should be applied; whether Douglas waived any claims under the trust code by failing to administer Keith's estate; who had the burden to prove the probate estate had sufficient assets to pay NASB's claims; and whether the law of merger applied, thus terminating the trust, since Douglas was the sole trustee and sole beneficiary of the trust.

Douglas' issues of law included whether any determination could be made regarding the validity of a personal claim against Keith since neither Keith nor his estate was a party to the lawsuit; whether the remedies requested by NASB were barred as having not been pled; and whether the remedies requested by NASB were remedies only available to a properly determined creditor.

The parties also provided trial briefs. NASB argued Keith had provided trust assets in his financial statement to NASB, and Douglas had never probated Keith's will. NASB contended it had sought information about trust assets, but Douglas was not forthcoming with information. NASB argued that under Kansas law: (1) it was not filing a claim against "decedent's estate" under the nonclaim statute of the probate code; (2) Douglas never provided evidence of a will; (3) Douglas never provided NASB proper notice under K.S.A. 59-2236; (4) the guaranties were binding on heirs; and (5) the guaranty included a waiver of defenses such as failure to file a probate estate. NASB continued to distinguish between a suit brought under the trust code and one brought under the probate code. Finally, NASB argued the doctrine of merger applied—a trust terminates when the same person is the sole trustee and the sole beneficiary of a trust because the legal and equitable interests merge, but NASB suggested it did not affect its rights. NASB cited to the Restatement (Third) of Trusts and Kansas law but not California law.

10

Douglas continued to argue the nonclaim statute barred NASB's request for recovery. The trustee cited Kansas law for the proposition that the nonclaim statute covers all demands against an estate, and K.S.A. 58a-505 can only be used to *satisfy* a claim against an estate.

The district court held a bench trial on November 25, 2013. A transcript of the trial is not included in the record on appeal for this case. It is, however, included in the record of the companion case, No. 112,097.

At trial, NASB argued it was Douglas' burden, not NASB's, to establish what was the extent of the probate estate. NASB also argued the merger doctrine applied, which terminated the trust upon Keith's death. NASB asserted the termination of the trust did not affect its rights under K.S.A. 58a-505(a)(3). NASB cited no law supporting this argument.

NASB also provided its posttrial nonstipulated facts and proposed conclusions of law: The nontrust assets were insufficient to satisfy the claim; K.S.A. 59-2239 does not apply, and NASB's K.S.A. 58a-505 claim was timely; Douglas failed to give the bank proper notice; the doctrine of merger applied, but cited only to persuasive authority; an equitable lien or constructive trust against Douglas should be imposed upon Douglas in favor of NASB; and NASB should be awarded attorney fees. NASB did not cite California authority.

On May 23, 2014, the district court issued a journal entry of judgment on this case and its companion case. The court issued judgment in favor of Douglas and determined NASB could not recover on the notes from the Volkland Family Trust.

The district court determined Douglas was the "sole successor trustee of to the Volkland Family Trust, the sole beneficiary [*sic*] the Volkland Family Trust, the only

11

person would was [*sic*] to take money under the will of E. Keith Volkland, and the sole heir of E. Keith Volkland." The court also found that NASB did not (1) file a claim against Keith's estate; (2) open a probate estate for Keith; (3) present any evidence at trial as to what the probate estate would have contained; or (4) take any judicial action to hold Keith or his estate liable on the guaranties. The loan documents did not require Douglas and Janet to open a probate estate for Keith.

The district court determined NASB, in summary judgment briefing, had failed to come forward with affirmative evidence to establish that Keith's probate estate was or would have been insufficient to satisfy its claims in response to the trustee's motion for summary judgment. The court determined "[t]hat decision is now the law of the case, and NASB cannot present contrary evidence during trial." The court went on to note that even if it would consider evidence of Keith's probate estate, NASB provided no evidence at all as to what the probate estate of Keith would have contained had it been opened.

In denying NASB's request to seek payment from the Volkland Family Trust, the district court did not address: (1) whether it applied Kansas or California law to the trust; (2) whether it considered the doctrine of merger as provided in the pretrial order and NASB's trial brief; or (3) termination of the Volkland Family Trust.

On June 25, 2014, NASB filed a motion to amend. NASB did not argue anything about the district court's failure to address merger or the application of California law.

On June 30, 2014, NASB filed its notice of appeal expressing its intent to appeal the May 23, 2014 journal entry and "subsequent journal entries or judgment constituting a part of the final judgment."

Although the companion cases were never consolidated in the district court, the court held a joint trial on the two cases. When the court issued its journal entry of

12

judgment, it issued one journal entry that encompassed its ruling in both cases. The journal entry caption included both case numbers and was issued on May 23, 2014. For unknown reasons, the journal entry was only filed in the record on appeal for case No. 12-CV-9467. NASB filed its notice of appeal on June 30, 2014, more than 30 days after the journal entry was issued, but prior to it being filed in the record on appeal for the case. On August 4, 2014, the first of two show cause orders were issued because it appeared the notice of appeal was untimely filed.

Douglas responded to show cause order 1 claiming there was no dispute that the judgment was entered on May 23, 2014 because the document contained the underlying case number in the caption, each page of the judgment includes an electronic file stamp, "05/23/14 9:40am CM," and the parties received an email from the district court clerk's office with a PDF copy of the judgment.

NASB responded in relevant part asserting that the journal entry was not filed in the underlying case for purposes of K.S.A. 2014 Supp. 60-258 ("No judgment is effective unless and until a journal entry or judgment form is signed by the judge and filed with the clerk."), Supreme Court Rule 108(a)(1) (2014 Kan. Ct. R. Annot. 220) (court records include "all original court records, documents, and filings, including electronic transmissions."), and Supreme Court Rule 196(a)(4) (2014 Kan. Ct. R. Annot. 297) ("'Court case record' means filings or other activity relating to a particular case.") because the journal entry, as of the date of NASB's response, had not been filed electronically in the district court record below. Therefore, NASB argued its notice of appeal should be treated as a Supreme Court Rule 2.03(a) (2014 Kan. Ct. R. Annot. 12) premature notice of appeal.

After reviewing the parties' responses, this court issued a second show cause order (Show Cause Order 2) on September 2, 2014. This court ordered the parties to show

13

cause why the appeal should not be dismissed if judgment was never officially entered in 12-CV-8619.

Douglas maintained his argument from his response to Show Cause Order 1. He argued K.S.A. 60-258 "does not make a distinction as to when a judgment is noted in the unofficial electronic docket of a case." Douglas argued the certified copy showed the journal entry was filed on May 23, 2014. Douglas contended emphasis on the mere "scan[ning]" of a judgment into the court record is misplaced because NASB had notice that the journal entry was issued minutes after it was issued on May 23, 2014.

NASB responded and indicated it requested that the journal entry be filed in the court record for case No. 12-CV-8619. On September 10, 2014, the journal entry was filed in the court record.

This court determined NASB's notice of appeal was prematurely filed and retained the appeal.

*Jurisdictional Issues*

Douglas first asks us to reconsider the decision to retain this appeal. Our review of jurisdiction issues is unlimited. *In re T.S.W.,* 294 Kan. 423, 432, 276 P.3d 133 (2012).

Before reviewing NASB's challenges to the district court's decisions below, we must consider whether we have jurisdiction to review those decisions. In prebriefing motions, Douglas alleged NASB's notice of appeal was untimely, and therefore this court lacked jurisdiction to consider the case. On appeal, Douglas has expanded his challenges to jurisdiction.

14

Douglas reiterates the arguments he made in response to Show Cause Orders 1 and 2 and asks us to reconsider the prior decisions. He argues the notice of appeal filed June 30, 2014, was untimely because it was filed more than 30 days after the district court issued its journal entry on May 23, 2014. Douglas contends that the act of filing the journal entry in the district court record—which did not occur until September 10, 2014—is merely a technicality.

In Kansas, parties must file a notice of appeal within 30 days from the date judgment was entered. K.S.A. 2014 Supp. 60-2103(a). "A judgment is the final determination of the parties' rights in an action." K.S.A. 2014 Supp.60-254(a). A judgment is effective after a "journal entry or judgment form is signed by the judge and filed with the clerk." K.S.A. 2014 Supp.60-258(a).

Kansas Supreme Court Rule 2.03 (Kan. Ct. R. Annot. 12) provides that a notice of appeal filed after a judge announces a judgment to be entered, but before actual entry of judgment is an effective notice of appeal under K.S.A. 2014 Supp. 60-2103 if it sufficiently informs all parties of the rulings to be reviewed on appeal.

After reviewing the record, we see no reason to disagree with the decision to retain the appeal. NASB filed its notice of appeal after the district court announced the judgment, but before the judgment was actually entered into the court record. The record clearly reveals the journal entry of judgment was not filed in the court record of 12-CV-8619 for purposes of creating a final judgment until September 10, 2014. Because NASB filed its notice of appeal on June 30, 2014—in between the time the district court announced its judgment and the time the judgment was actually filed—this court properly retained this appeal.

*The August 17, 2013, Summary Judgment Decision*

For the first time, Douglas also challenges our jurisdiction to review the August 27, 2013, memorandum decision. Douglas asserts the summary judgment memorandum decision entered August 27, 2013, constituted the final judgment in this case. Because NASB did not file a notice of appeal within 30 days of the entry of that judgment as required by K.S.A. 2014 Supp. 60-2103, Douglas asserts we lack jurisdiction to review that decision.

In Kansas, a partial summary judgment—one that disposes of fewer than all of the claims or issues between the parties—is not a final judgment for appeal purposes. *Vallejo v. BNSF Ry. Co.*, 46 Kan. App. 2d. 498, 503, 263 P.3d 208 (2011). So, an order granting partial summary judgment is not an appealable order. 46 Kan. App. at 503-04. But, in "any appeal or cross appeal from a final decision, any act or ruling from the beginning of the proceedings shall be reviewable." K.S.A. 2014 Supp. 60-2102(a)(4); see also *Roy v. Young*, 278 Kan. 244, 253, 93 P.3d 712 (2004) (Order denying motion for partial summary judgment reviewable as part of appeal to final judgment).

In order to appeal a judgment that does not dispose of all the claims, a party may request certification to file an appeal under K.S.A. 2014 Supp. 60-254.

> "When an action presents more than one claim for relief, . . . the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." K.S.A. 2014 Supp. 60-254(b).

16

Douglas' argument that it was a final judgment is contrary to well established Kansas law. The decision itself indicates it did not address every claim indicating it was not a final order for purposes of appeal. It listed multiple issues that would affect the ultimate outcome of the case that the district court was not deciding in that decision: (1) whether the creditor had to file a claim against decedent's estate before collecting from a trust; (2) whether NASB was given sufficient notice pursuant to K.S.A. 59-2239, the nonclaim statute; and (3) whether NASB's claim against the estate was not time-barred pursuant to K.S.A. 59-2239 (though the court did seem to decide this based on its decision to grant summary judgment for the trustee). The district court's August 27, 2013, decision does not satisfy the requirements of K.S.A. 60-254(b) and was therefore not final or appealable. See *Vallejo*, 46 Kan. App. 2d at 504.

Because NASB filed a timely notice of appeal of the final journal entry of judgment in this case, we can review all decisions from the start of the proceedings, including the August 27, 2013 memorandum decision. See K.S.A. 60-2102(a)(4); *Roy*, 278 Kan. at 253. Douglas' challenge to jurisdiction fails.

Douglas also argues that if we determine the August 27, 2013, summary judgment decision was not final, we still lack jurisdiction to review the decision "because appellate jurisdiction arises only with respect to final judgments." This issue is also raised for the first time on appeal. Douglas suggests NASB *was required* to request certification that the judgment was final to satisfy the requirements of K.S.A. 60-254(b) in order to properly appeal the August 27, 2013, decision. Because NASB failed to request K.S.A. 60-254(b) certification, Douglas claims that decision became the "law of the case" and we may only review for manifest injustice. Douglas' arguments are convenient—we cannot review the decision if it was final because the notice of appeal was untimely, but we cannot review the decision if it was not final because we cannot review decisions that are not final—or may only do so to prevent manifest injustice.

17

This argument is problematic for two reasons. First, in arguing that NASB *had* to request certification under K.S.A. 60-254(b) in order to preserve the issue for appeal, Douglas misinterprets or misreads the statute itself. Nothing in the statue makes it mandatory that a party request K.S.A. 60-254(b) certification in order to preserve the issue for appeal. And the decision whether to direct a final entry of judgment is clearly discretionary: "[T]he court *may* direct entry of a final judgment." K.S.A. 2014 Supp. 60-254(b). Further, Kansas case law indicates one proper way to appeal a partial summary judgment order is to appeal the final order once issued. See *Vallejo*, 46 Kan. App. 2d at 504.

So NASB was not required to request certification in order to challenge the decision on appeal, and NASB properly filed a notice of appeal of the final order in the case.

Second, Douglas also asserts that NASB's failure to file an interlocutory appeal of that decision renders it the law of the case. But he seems to misunderstand that doctrine. The law of the case doctrine provides guidance to a court when it is presented with an issue already decided in the same suit. Douglas asserts this doctrine governs our standard to review the summary judgment ruling.

The "law of the case doctrine" is a "practice to guide the court." *Venters v. Sellers*, 293 Kan. 87, 99, 261 P.3d 538 (2011). It "is 'a discretionary policy which expresses the practice of the courts generally to refuse to reopen a matter already decided, without limiting their power to do so.'" 293 Kan. at 99. The doctrine allows a court to refuse to relitigate and reconsider *its own prior decisions* in successive stages of litigation unless that decision was clearly erroneous or would cause manifest injustice. See 293 Kan. at 99; see also *Rodriguez-Tocker v. Estate of Tocker,* 35 Kan. App. 2d 15, 25, 129 P.3d 586, *rev. denied* 281 Kan. 1379 (2006) (review on interlocutory appeal of the district court's partial summary judgment decision barred under "law of the case doctrine" because this court's motions panel previously denied the interlocutory appeal); *Missouri Bank & Trust Co. v. Gas-Mart Development Co.*, 35 Kan. App. 2d 291, 298, 130 P.3d 128 (2006)

18

(district court properly applied the doctrine when parties had previously joined identical issues in previous stage of same suit.)

Because NASB is not asking *the district court to relitigate an issue previously decided* in the same suit, but is instead asking us to review a decision of the lower court, the law of the case doctrine is inapplicable. And even if it were applicable, the doctrine is a discretionary one, so we could choose not to apply it and its clear error or manifest injustice standard and instead follow our proper standard of review for reviewing rulings on summary judgment motions.

Therefore, we have jurisdiction to review the August 27, 2013, memorandum decision.

Next, we consider NASB's challenges to the district court's decisions. NASB challenges the court's decisions on many fronts. It is difficult to understand the precise nature of NASB's challenges to the district court's decision to grant Douglas' motion for summary judgment in its August 27, 2013, memorandum decision. Issue A generally challenges the granting of the trustee's motion for summary judgment and Issue B challenges the final order in the case.

NASB lodges many attacks against the district court's decision to grant Douglas' motion for summary judgment and the ultimate trial outcome. On appeal, NASB claims the following errors in the district court's summary judgment decision:

- Issue A.2: The trial court erred as a matter of procedure in granting trustee's motion for summary judgment asserting a K.S.A. 59-2239 defense;
- Issue A.3: NASB was not asserting a claim against a decedent's estate as contemplated by K.S.A. 59-2239;

19

- Issue A.4: The district court granted trustee's motion for summary judgment without considering a merger;
- Issue A.5: Trustee had a duty, after termination of the trust, during the "wind up" period to satisfy trust obligations, including Guaranty 1 and 2;
- Issue A.5.a: The trust code provided jurisdiction over Douglas during the unofficial wind up period.
- "Choice of law was a central, unresolved issue in the case" and "was arguably a predicate to any decision about the applicability of [K.S.A] 59-2239."

NASB also challenges the district court's decision finding NASB was not entitled to seek payment from trust assets on essentially the same grounds. NASB argues:

- Issue B.2: The district court failed to address whether a merger terminated the Volkland Family Trust after Keith's death;
- Issue B.2.a: The district court failed to address choice of law, exhaustion of probated assets, rights to notice from a trustee, and duties of a trustee to creditors when there was no probate;
- Issue B.2.b: NASB was entitled to further proceedings to assure that the trustee conducted a proper wind up on the Volkland Family Trust;
- NASB was entitled to a declaratory judgment applying trust law to its petition.

Because the alleged errors in both decisions are essentially the same, for purposes of efficiency, each challenge will only be addressed once.

*Our Standards of Review*

*Summary Judgment Memorandum Decision*

When the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. The district court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, the same rules apply; summary judgment must be denied if reasonable minds could differ as to the conclusion drawn from the evidence. *Stanley Bank v. Parish*, 298 Kan. 755, 759, 317 P.3d 750 (2014).

We review an order regarding summary judgment with no deference to the trial court. *Martin v. Naik*, 297 Kan. 241, 246, 300 P.3d 625 (2013). Our review of the district court's decision granting summary judgment is de novo.

*Journal Entry of Final Judgment*

When reviewing a mixed question of fact and law, an appellate court applies a bifurcated review standard. The court's factual findings are generally reviewed under the substantial competent evidence standard. Its conclusion of law based on those facts are subject to unlimited review. See *Gannon v. State*, 298 Kan. 1107, 1175-76, 319 P.3d 1196 (2014). Again, it is the legal conclusions NASB challenges.

We turn to each of NASB's claims of errors.

21

*Wind Up*

NASB argues the trust terminated as a matter of law upon Keith's death under the doctrine of merger. NASB asserts Douglas had a duty to administer the trust during a "wind up" period and the district court had jurisdiction to oversee the wind up. NASB contends K.S.A. 58a-506(b) allows a creditor to be repaid at trust termination. NASB urges us to remand to the district court to declare that merger has occurred and to assure Douglas conducts a proper wind up.

Generally, issues not raised before the district court cannot be raised on appeal. See *State v. Bowen* 299 Kan. 339, 354, 323 P.3d 853 (2014); *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014). This includes new grounds for summary judgment raised for the first time on appeal. See *McCarthy v. City of Leawood*, 257 Kan. 566, 580, 894 P.2d 836 (1995).

However, appellate courts have considered newly raised issues in certain exceptional circumstances, such as when (1) the newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case; (2) consideration of the theory is necessary to serve the ends of justice or to prevent the denial of fundamental rights; and (3) the district court can be affirmed as right for the wrong reason. *State v. Phillips*, 299 Kan. 479, 493, 325 P.3d 1095 (2014). Supreme Court Rule 6.02(a)(5) (2014 Kan. Ct. R. Annot. 40) requires an appellant to explain why an issue was not raised below but should still be considered on appeal, or risk abandoning the issue. See *State v. Williams*, 298 Kan. 1075, 1085, 319 P.3d 528 (2014). Our Supreme Court recently held that in order for appellate courts to consider an issue raised for the first time on appeal, an exception *must affirmatively* be invoked by the party asserting the claim for the first time on appeal under Kansas Supreme Court Rule 6.02(a)(5). *State v. Godfrey*, 301 Kan. 1041, Syl., 350 P.3d 1068 (2015).

The record reveals NASB raises the issue of windup for the first time on appeal. NASB also failed to argue any of the exceptions to the general rule prohibiting this court from reviewing an issue raised for the first time on appeal. Because NASB failed to invoke an exception, we will not consider an issue raised for the first time on appeal. See *Godfrey*, 301 Kan. at 1044.

However, a brief review of the statutes governing distribution indicates that NASB would not be entitled to receive funds from the trust assets were we to remand it. K.S.A. 58a-817 governs distribution of trust assets upon termination. Specifically, K.S.A. 58a-817(b) requires that the trustee "shall proceed expeditiously to distribute the trust property to the persons entitled to it." For reasons discussed below, without a judgment against Keith or his estate, NASB cannot show they are entitled to the trust property. Additionally, K.S.A. 2014 Supp. 58a-506(b) indicates a "creditor . . . *of a beneficiary may* reach a mandatory distribution . . . upon termination of the trust." Because NASB asserts it was a creditor of Keith, who was no longer a beneficiary of the trust on the date the original petition was filed, K.S.A. 2014 Supp. 58a-506(b) would not provide the relief NASB seeks even if the issue were properly before us.

*Choice of Law*

NASB also argues the district court erred in failing to address choice of law at both the summary judgment proceedings and at trial. NASB contends "[c]hoice of law was a central, unresolved issue in this case." The "choice of law issue was arguably a predicate to any decision about the applicability of [K.S.A.] 2014 Supp. 59-2239." NASB asserts that the trustee "made no effort to discuss California or Kansas trust statutes, [so] there was no acceptable examination" of the exhaustion requirement of the trust code, notice requirements of the trust code, or merger. Douglas urges us to refrain from reviewing the issue because (1) NASB invited the error below by arguing Kansas law in

23

its summary judgment motion briefing, and (2) under K.S.A. 58a-105(b)(5), the terms of a trust agreement do not prevail over specific provisions of the trust code with regard to an action seeking a determination of the rights of creditors to reach a trust.

Notably, NASB glides over the fact that it had based its arguments below entirely on the Kansas trust code, and therefore NASB also failed to cite to or apply California law in any of the summary judgment proceedings or trial briefing. The only mention of California law appears to be in the pretrial order in which NASB indicated a legal issue it wished to address was whether California or Kansas law applied. However, the district court noted the parties' failures to address the issue and independently addressed choice of law in its memorandum decision addressing the summary judgment motions.

In Kansas, the trust code provides that courts are to apply the "law of the jurisdiction designated in the terms unless the designation of that jurisdiction's law is contrary to the law of the jurisdiction having the most significant relationship to the matter at issue." K.S.A. 58a-107(a); see also *Commerce Bank, N.A. v. Bolander*, 44 Kan. App. 2d 1, 8, 239 P.3d 83 (2007) (The court is free to go outside the choice of law designation in a trust in establishing the jurisdiction "having the most significant relationship to the matter at issue."). Though trust provisions generally override the trust code, our legislation has set out specific and limited exceptions in the trust code to govern regardless of a trust provision. K.S.A. 2014 Supp. 58a-105(b). One such exception is the effect of the rights of creditors to reach a trust. K.S.A. 2014 Supp. 58a-105(b)(5); see also *In re Hilgers*, 352 B.R. 298, 304 (Bankr. D. Kan. 2006), *aff'd* 279 F. App'x. 662 (10th Cir. 2008). Because our legislature has expressed its intent to apply the Kansas trust code in cases involving the rights of a creditor to reach trust assets, the district court did not err in applying Kansas law.

Further bolstering the conclusion that the application of Kansas law was not erroneous is the fact that "[n]o choice of law question is presented when the laws of the

24

involved states do not differ on substantive issues." *Atchison, Topeka & Santa Fe Ry. Co. v. Stonewall Ins. Co.*, 275 Kan. 698, 732, 71 P.3d 1097 (2003).

In its August 27, 2013, memorandum decision in which the district court ruled on both parties' summary judgment motions, the court applied the Kansas law the parties had argued. But, it also expressed concern over the choice of law provision included in the trust:

> "The Court is concerned because both parties have presented their arguments to the Court pursuant to Kansas law. However, the trust documents clearly show that California law applies. 'The meaning and effect of the terms of a trust are determined by: (1) The law of the jurisdiction designated in the terms unless the designation of that jurisdiction's law is contrary to the law of the jurisdiction having the most significant relationship to the matter at issue.' Accordingly, California law applies unless the state with the most significant relationship to the matter has contrary law. 'The resolution of the question of the State with the most significant relationship to the Trust under K.S.A. 58a-107 is both a question of fact and law. As one would expect this issue is very fact specific since each determination under K.S.A. 58a-107 presents a unique set of facts.' The parties have not presented any evidence to show which jurisdiction has the most significant relationship to this matter. The only facts presented relevant to a determination that any state's law other than California might apply is that E. Keith Volkland died as a resident of Johnson County, Kansas.
>
> "Despite the fact that California law applies absent contrary law in a jurisdiction with more significant relationship to the issue, it is inconsequential in this instance because California and Kansas law on the topic are similar. The California probate code provides, in pertinent part, that:
>
>> 'Upon the death of a settlor, the property of the deceased settlor that was subject to the power of revocation at the time of the settlor's death is subject to the claims of creditors of the deceased settlor's estate . . . . to the extent that the deceased settlor's estate is inadequate to satisfy those claims and expenses.' [Cal. Probate Code § 19001(a)]."

25

The court then went on to explain that under the law of both jurisdictions, the trust code merely provides a "right to *payment* from the trust after a judgment is entered against the decedent/settlor. Therefore, the court concluded it was immaterial which law the court applied because the result would be the same.

Our independent review of California law governing a creditor's ability to reach assets of a revocable trust after the settlor's death indicates the statute is substantially similar to K.S.A. 58a-505(a)(3). For ease of reference, K.S.A. 58a-505(a)(3) provides:

> "After the death of a settlor, and subject to the settlor's right to direct the source from which liabilities will be paid, *the property of a trust* that was revocable at the settlor's death *is subject to claims of the settlor's creditors, . . . to the extent the settlor's probate estate is inadequate to satisfy those claims, costs, expenses, and allowances*." (Emphasis added.)

The California statute provides:

> "Upon the death of a settlor, *the property of the deceased settlor* that was subject to the power of revocation at the time of the settlor's death *is subject to the claims of creditors* of the deceased settlor's estate and to the expenses of administration of the estate *to the extent that the deceased settlor's estate is inadequate to satisfy those claims and expenses*." (Emphasis added.) Cal. Probate Code § 19001.

Even though NASB failed to apply California law in summary judgment proceedings or argue that California law applied, the district court did review the relevant California law. The court determined the result would be the same regardless of which law applied—a determination we agree with. See *Stonewall Ins. Co.*, 275 Kan. at 732 (no choice of law issue when the laws are substantially the same).

26

Douglas urges us to refuse to consider the issue on the grounds that NASB invited the error. We can also dispose of this challenge on that rule.

Generally, when a party has invited error, the party cannot complain of the error on appeal. *Thoroughbred Assocs. v. Kansas City Royalty Co.*, 297 Kan. 1193, 1203, 308 P.3d 1238 (2013). Because NASB based its argument below on Kansas law and failed to argue California law applied, and to apply California law to its arguments even after the district court noted the parties' failure to rely on California law, NASB invited the court to rule on Kansas law and cannot complain of the error on appeal.

Alternatively, NASB also abandoned the issue. To the extent NASB challenges the district court's application of Kansas law at the trial, we decline to review that decision. A point raised incidentally in a brief and not argued therein is deemed waived and abandoned. *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 645, 294 P.3d 287 (2013)."F]ailure to support an argument with pertinent authority or to show why the argument is sound despite a lack of supporting authority or in the face of contrary authority is akin to failing to brief the issue." *State v. Tague*, 296 Kan. 993, 1001, 298 P.3d 273 (2013).

In NASB's discussion of the district court's final judgment, NASB merely asserts that we may review a choice of law issue with no deference to the lower court. But NASB fails to assert the error it alleges the district court made since NASB continued to apply Kansas law to its arguments even after the district court's expression of concern in its August 27, 2013, memorandum and never argued California law should apply. NASB also fails to explain how the application of California law would change the outcome, or how it would guide our analysis. This is akin to failing to brief the issue and we decline to consider it.

27

Alternatively, we could determine NASB had waived the choice of law issue. Because the NASB failed to argue California law applied or actually applied California law to its arguments in its trial brief or at trial—instead of relying solely on Kansas law and secondary sources—the issue is deemed waived. See *Nelson v. Nelson*, 288 Kan. 570, 578, 205 P.3d 715 (2009).

Finally, if we determine the district court did err in applying Kansas law to its decisions, any error would be harmless. Harmless error is error which does not prejudice the substantial rights of the parties or will not affect the trial's outcome. *Commerce Bank*, 44 Kan. App. 2d at 21. Because our independent review of California law indicates the application of it would not affect the analysis, any error would be harmless.

*Merger*

On appeal, NASB argues the district court, in ruling on summary judgment motions, failed to independently review California's entire trust code and the Restatement (Third) of Trusts and sua sponte apply the doctrine of merger even though NASB did not mention merger applied until the pretrial order. NASB also asserts the district court erred in not finding merger had occurred at trial.

In the pretrial order, NASB indicated it wished to determine whether merger applied and cited to the Restatement (Third) of Trusts as authority. At trial, NASB argued one time in opening statements that it believed the interest of the trustee and beneficiary had merged upon Keith's death since Douglas was the sole trustee and sole beneficiary. And in its posttrial conclusions of law, NASB urged the court to determine merger had occurred. NASB failed to explain the procedural effects of the application of doctrine of merger, explain why it believed merger had occurred, to cite to binding authority such as Kansas Supreme Court cases or a statute in support of the application of the doctrine, or even argue why Kansas should adopt the doctrine under these facts.

28

NASB's suggestion that the district court erred in failing to identify merger as an issue during summary judgment proceedings independently is meritless. Because NASB failed to even hint at the doctrine of merger—a doctrine Kansas courts have recognized in a few cases, but has not codified in the trust code—the court was not under a duty to make NASB's case for it. The district court complied with K.S.A. 58a-107(a) when it reviewed the California trust code provisions analogous to the arguments the parties made during summary judgment proceedings and determined that the laws were substantially similar.

We also decline to review NASB's challenge to the May 23, 2014 journal entry. Supreme Court Rule 165 (2014 Kan. Ct. R. Annot. 272) places on the district court the primary duty to provide adequate findings and conclusions on the record of the court's decision on contested matters. A party, however, must object to inadequate findings of fact and conclusions of law to preserve an issue for appeal. Such objections necessarily give the district court an opportunity to correct any alleged inadequacies. See *Fischer v. State*, 296 Kan. 808, 825, 295 P.3d 560 (2013).

When no objection is made to a district court's inadequate findings of fact or conclusions of law, an appellate court can presume the district court found all facts necessary to support its judgment. Where, however, the record does not support such a presumption and the lack of specific findings precludes meaningful review, an appellate court can consider a remand. *O'Brien v. Leegin Creative Leather Products, Inc.*, 294 Kan. 318, 361, 277 P.3d 1062 (2012).

Because NASB failed to object to the district court's findings or request the court make additional findings regarding merger, we will presume the district court found all facts necessary to support its judgment.

29

Additionally, a brief review of the doctrine of merger indicates it does not advance NASB's position because had the two interests merged, the trust would have automatically terminated upon Keith's death leaving no trust for which NASB could seek payment of Keith's indebtedness under the guaranties. In *Fry v. McCormick*, 170 Kan. 741, 742-43, 228 P.2d 727 (1951), our Supreme Court recognized the sound statement that

> "a sole beneficiary of a trust cannot be the sole trustee thereof and conversely that a sole trustee of a trust cannot be the sole beneficiary thereof, citing Restatement, Trusts, § 99(5) and § 115(5). . . . It is based on the established principle that if the rule were otherwise the legal title and the entire beneficial interest would be merged in the same person who could freely dispose of the property as any other owner. In other words there would be no separation of the legal and beneficial interest and hence no trust relationship."

However, the facts of *Fry* were distinguishable as there were four trustees of the trust at issue in *Fry*. So, the Supreme Court did not actually apply the doctrine of merger or explain the termination process—whether it is automatic or requires a judicial determination. Our Supreme Court also addressed the doctrine of merger in *Gillespie v. Seymour*, 250 Kan. 123, 136, 823 P.2d (1991), but again the Supreme Court did not apply the doctrine because the trust involved had several beneficiaries who were also the trustee.

However, 5 Scott on Trusts § 34.5, p. 2261 (5th ed. 2008) discusses merger in the Uniform Trust Code § 402(a)(5). Kansas has adopted that section of the Uniform Trust Code, K.S.A. 58a-402(a)(5). That section provides that a "trust is created only if: . . . the same person is not the sole trustee and sole beneficiary." Our Supreme Court has not spoken on the effects of merger under facts similar to those presented in this case, so we do not have precedent to guide us. However, the discussion in 5 Scott § 34.5, p. 2261 is helpful:

30

"One cannot owe duties to oneself. Thus, the sole beneficiary of a trust cannot be its sole trustee. Indeed, if the entire beneficial interest and legal title to the trust property ever come together in one person, the trust automatically terminates. The equitable interest is said to merge into the legal title."

Here, the trust would have terminated on May 4, 2012. Douglas' equitable interest would have merged into the legal title upon him becoming the sole trustee and sole beneficiary. As Keith's sole heir, the trust property would have passed to Douglas in his individual capacity. As this suit seeks declaration against Douglas only in his capacity as trustee or a trustee who would no longer have existed, we would be unable to provide the remedy. NASB would need to sue Douglas as an individual on the note if that statute of limitations has not since expired.

*Was NASB Entitled to Seek Trust Assets?*

The substantive issue in this appeal is NASB's argument that the district court erred in refusing to allow NASB to seek trust assets to satisfy Keith's indebtedness on the guaranties. In order to address this question, we must determine the interplay between the nonclaim statute in the probate code, K.S.A. 59-2239, and a creditor's right to payment from the assets of a deceased settlor's revocable trust under K.S.A. 58a-505(a)(3) when no probate estate was opened.

NASB maintains its argument that a cause of action brought under K.S.A. 58a-505(a)(3) is separate and apart from a cause of action brought under the probate code, and therefore the probate nonclaim statute K.S.A. 59-2239 is inapplicable. Douglas asserts that K.S.A. 58a-505(a)(3) is merely a vehicle for payment of a judgment obtained elsewhere, not as an independent cause of action. The district court determined NASB had to prove that the probate estate was insufficient to satisfy the debt before it could

31

establish a right to payment under K.S.A. 58a-505(a)(3). The trial court treated this as a problem with NASB failing to plead an essential element.

The relevant Kansas statutory provisions—K.S.A. 58a-505(a)(3) and K.S.A. 59-2239—have not been addressed and argued at length by appellate courts. The trust code allows a creditor to reach revocable trust assets after a settlor's death:

> "After the death of a settlor, and subject to the settlor's right to direct the source from which liabilities will be paid, the property of a trust that was revocable at the settlor's death is subject to claims of the settlor's creditors, . . . to the extent the settlor's probate estate is inadequate to satisfy those claims, costs, expenses, and allowances." K.S.A. 58a-505(a)(3).

K.S.A. 59-2239 provides:

> "(1) All demands, including demands . . . against a decedent's estate . . . including any demand arising from or out of any statutory liability of decedent or on account of or arising from any liability as surety, guarantor or indemnitor . . . shall be forever barred from payment unless the demand is presented within . . . six months after the death of the decedent and such creditor has exhibited the creditor's demand in the manner and within the time prescribed by this section, except as otherwise provided by this section."

Our Supreme Court has not squarely addressed this issue in a factually similar situation, but other cases and the plain language of the statutes themselves provide guidance.

In *Commerce Bank, N.A. v. Bolander*, 44 Kan. App. 2d 1, 14, 239 P.3d 83 (2007)—a case heavily relied on by NASB—a bank brought an action against a settlor's estate and revocable trust seeking the balance owed on a promissory note the settlor executed before her death. When the settlor died, she had an unpaid promissory note with

32

Commerce Bank. Commerce filed a Chapter 60 petition seeking a money judgment against the estate for the balance of the promissory note and foreclosure of its security interests and mortgage. Commerce amended its petition to add the successor trustee as an additional defendant "claiming that since the Trust was revocable at the time of [settlor's] death, the Trust property was subject to Commerce's claim as well." 44 Kan. App. 2d 4-5.

Before delving further into the facts and holdings of *Commerce Bank*, it is helpful to note some distinctions. Here, NASB never filed a petition seeking a money judgment against Keith's estate. It only filed a petition against Douglas as trustee.

In relevant part, Commerce filed for summary judgment against the trust claiming the estate was insolvent. The district court granted Commerce's motion for summary judgment, even though the settlor's estate had not been fully administered. The trustee appealed on numerous grounds, including the district court's grant of summary judgment.

The *Commerce Bank* court affirmed the district court. It considered the legislature's intent when it enacted K.S.A. 58a-505(a)(3)—the provision allowing a creditor to reach assets of a revocable trust after settlor's death. The court determined that allowing a creditor, after settlor's death, to reach assets that were protected by the trust during the settlor's life,

> "promotes a valid public policy that a person ought not to be able to shelter his or her assets from creditors in a discretionary trust of which he or she is the beneficiary and thus be able to enjoy all the benefits of ownership of the property without any of the burdens." 44 Kan. App. 2d at 13.

The *Commerce Bank* court also looked to California law after determining it was similar to Kansas law on the subject. In California,

33

"[t]o be entitled to invoke the payment procedure of Probate Code §19001, *a judgment creditor need only establish it has a money judgment against the decedent*. Thereafter, the judgment is paid in the normal course of administration of the trust. Thus, it was unnecessary for the creditor to either amend the complaint to name the trust or trustees as parties . . . or . . . to file a separate action against the trustees. [*Dobler v. Arluk Medical Center Industrial Group, Inc.* 89 Cal. App. 4th, 530, 539-41, 107 Cal. Rprtr. 2d 478 (2001)]" (Emphasis added.) 44 Kan. App. 2d at 14.

The *Commerce Bank* court determined this was the best interpretation "under Kansas statutory law and persuasive authority from other states" and affirmed the district court. 44 Kan. App. 2d at 13.

The *Commerce Bank* court was clear to note that it affirmed the district court's decision which allowed Commerce to reach trust assets under K.S.A. 58a-505(a)(3) before the settlor's estate had been fully administered because "this case [is] unique in that the district court had clear evidence that the Estate was insolvent and that no part of Commerce's claim would be paid by the Estate before the district court ever entered judgment against the Trust." 44 Kan. App. 2d at 21. The court determined that "[b]ased on K.S.A. 58a–505, we find the district court did not err in concluding that *the Trust was subject to the judgment obtained by Commerce.*" (Emphasis added.) 44 Kan. App. 2d at 14.

The *Commerce Bank* court required evidence that the settlor's estate would be inadequate to satisfy a creditor's claims before the creditor could reach trust assets under K.S.A. 58a-505(a)(3). In *Commerce Bank*, the bank had filed a case against the settlor's estate and obtained a judgment. Only once it became clear that the estate was insolvent, was the bank able to reach revocable trust assets.

The *Commerce Bank* court did not discuss the interplay between K.S.A. 58a-505(a)(3) and K.S.A. 59-2239, because an estate had been opened for the settlor and there

was no challenge to the timeliness of Commerce's petition. The facts indicated that the settlor died on January 17, 2003, a will was admitted to probate in April 2003, and Commerce filed its petition on June 2, 2003. Therefore, *Commerce Bank* does not directly answer NASB's claim that a suit brought pursuant to 58a-505(a)(3) is not one against a "decedent's estate" for purposes of the nonclaim statute. However, a Kansas Supreme Court case is helpful.

In *Nelson v. Nelson*, 288 Kan. 570, 591, 205 P.3d 715 (2009), the Supreme Court addressed "the question of whether a claim must be made against a decedent's estate when it is alleged the decedent breached a contract to place his entire estate in a testamentary trust for the benefit of his adult children." 288 Kan, at 572-73. The decedent's adult children asked the court to impose a constructive trust against the transferees of their father's assets. The children argued their claim was not against the decedent's estate, but instead insisted it was "solely an 'action for equitable relief.'" 288 Kan. at 577. The district court held that "the decedent's assets were not subject to a constructive trust because a claim had not been made against the decedent's estate within the period of limitations imposed by the Kansas nonclaim statute, K.S.A. 59-2239." 288 Kan. at 573.

In affirming the district court, our Supreme Court held that K.S.A. 59-2239 is all encompassing of any type of claim brought against a decedent's estate: "[A] person who seeks to recover from the decedent, whether based on tort, contract, the decedent's will, or the statute of intestate succession, must recover, if at all, from the decedent's estate. 288 Kan. 572, Syl.¶ 17. The Supreme Court noted that the "nonclaim statute recognizes that *a decedent no longer has the individual capacity . . . to pay debts . . .* ; therefore, the estate must meet the decedent's financial obligations. *In re Estate of Reynolds*, 266 Kan. 449, 456-57, 970 P.2d 537 (1998)." 288 Kan. at 591.

The Supreme Court recognized that the primary purpose of K.S.A. 59-2239 was the speedy settlement of estates, which also benefits the creditors.

> "'In subservience to this purpose has been uniform construction of these statutes, and especially of the statute of nonclaim. In the absence of this statute, a settlement of an executor or administrator and the payment of legacies or distributive shares would be attended with the peril of future litigation by creditors against the beneficiaries and distributers to subject their legacies or distributive shares to the payment of debts. . . . 3 Barlett, Kansas Probate Law and Practice §1316.'" *Nelson*, 288 Kan. at 591.

Clearly, the term "all demands" should be "broadly inclusive of any and all claims, making exception only where a statute expressly provides otherwise." 288 Kan. 592. Therefore, *Nelson* guides us to find that NASB's claim under 58a-505(a)(3) is a claim against a "decedent's estate" because NASB seeks payment of a debt that Keith no longer has the individual capacity to pay and no statute expressly provides otherwise. See 288 Kan. at 591.

This determination is further bolstered by a plain reading of 58a-505(a)(3), which indicates that a predicate to seeking payment from the revocable trust of a decedent, the creditor must establish that the decedent's probate estate would have been insufficient to satisfy the claim. When language is plain and unambiguous, there is no need to resort to statutory construction. See *Milano's Inc. v. Kansas Dept. of Labor*, 296 Kan. 497, 500, 293 P.3d 707 (2013).

In Kansas, as in California, the trust code *provides a right to payment* of a judgment obtained elsewhere. A probate proceeding or other clear evidence that Keith's estate was insufficient to satisfy NASB's claim was a prerequisite to NASB being able to reach trust assets to satisfy Keith's indebtedness under the note.

36

Though only persuasive, the Kansas Bar Association's Probate & Trust Administration After Death (7th edition 2008) supports this conclusion as well. Section 3.2.3, "Creditor Deadlines" indicates a creditor is barred from filing a claim when "estate administration is not commenced . . . within six months of death. K.S.A. 59-2239(1)." Section 4.4.3(d)(1) addresses the liability of trust property to a settlor's creditors. The KBA noted that, as of 2008, "there has been no definitive answer as to whether the six-month provision [of K.S.A. 59-2239] can be applied to cut off claims of the settlor's creditors and alleviate a trustee's duty to pay claims arising under K.S.A. 58a-505." But the editors went on to note that the

> "language used in 59-2239 indicates that the six-month provision would apply to bar claims not only against the probate estate but also as to assets held in a revocablet trust of the decedent. The six-month provision under K.S.A. 59-2239 states that the claims against *the property of a decedent* are barred unless a petition for the administration is filed within six months from the date of the decedent's death." Section 4.4.3(d)(1) , pp. 248-49.

In order for NASB to have taken advantage of K.S.A. 58a-505(a)(3) it would have had to establish that the decedent's probate estate was insufficient to satisfy its claim. Therefore, NASB needed to open a probate estate within the time period allowed for under K.S.A. 59-2239 or somehow otherwise prove that the probate estate would have been established. This was NASB's burden, not the trustee's as NASB suggests.

Therefore, we affirm the district court's decision to grant Douglas' motion for summary judgment whether Kansas or California law applies. Because NASB did not first seek a judgment against Keith or Keith's estate before seeking payment from trust assets, summary judgment on behalf of Douglas was proper.

We also find no error in the district court's ultimate determination that NASB could not seek trust assets. The findings of fact—that Keith had a revocable trust, he

37

guaranteed Douglas and Janet's indebtedness, and that the indebtedness was outstanding—are not challenged. They are supported by substantial competent evidence. The notes and guaranties are included in the record establishing that Keith was liable on the notes Douglas and Janet took out with NASB.

For the reasons discussed above, the district court reached the correct result. Because NASB failed to establish that Keith's probate estate was insufficient to satisfy his indebtedness to the bank, NASB could not prevail on its claim. Further, our statutes and case law clearly indicate the trust code does not provide an independent cause of action for a creditor seeking assets of a decedent settlor's revocable trusts. Instead, the creditor must obtain a judgment against the decedent before using K.S.A. 58a-505(a)(3) as a vehicle for payment.

The district court is affirmed.

There is an issue concerning attorney fees and other litigation costs that is discussed in detail in the companion case (No. 112,097). Because NASB did not prevail in this case (No. 112,145) it cannot be awarded litigation expenses. Since the district court awarded expenses in one lump sum, we are remanding both cases for a proper determination of what expenses should be awarded to NASB.

Affirmed and remanded with directions.